### HILL v. CITY COUNCIL OF ABBEVILLE.

1. LICENSE TAXES—CITIES AND TOWNS—GENERAL ASSEMBLY.—CONSTITUTION authorizes General Assembly to provide for license or privilege taxes, and municipalities are allowed to graduate the same.

2. IBID.—THE CITY OF ABBEVILLE, under its charter, the Constitution of 1895, and acts of 1896 (22 St., 67), and 1897 (22 Stat., 464), has the power to pass an ordinance levying license or privilege taxes on businesses or occupations carried on in the city.

3. CONSTITUTION.—ACT OF 1897 (22 Stat., 464,) is not unconstitutional, nor repealed by act of 1899 (23 Stat., 70).

4. LICENSE TAXES—CITIES AND TOWNS.—Sec. 6, art. VIII., Con. of 1895, provides that license or privilege taxes shall be *just,* but not that they shall be *uniform,* and hence a municipality may tax some businesses or vocations and not others, and may tax in different ways, but it must tax without discrimination all businesses or vocations of the same class.

5. IBID.—DOGS.—A CITY may impose a license tax for the privilege of keeping a dog.

6. The Constitution and acts of General Assembly authorize cities and towns to levy license taxes under police regulations and for raising revenue.

Before ALDRICH, J., Abbeville, November, 1900.    Affirmed.

Action for injunction by R. M. Hill, in his own right and on behalf of all others similarly situated and affected, against City Council of Abbeville, on the following amended complaint:

"The plaintiff above named, by this, his amended complaint, complaining on behalf of himself and all others similarly situated and affected by the ordinance herein referred to, alleges:

"I. That the defendant, the city council of Abbeville, is

a body politic and corporate, and as such can sue and be sued.

"II. That the plaintiff is a citizen and taxpayer of the city of Abbeville, in the county and State aforesaid, and is engaged in the business of general merchandizing and buying cotton for Charles E. Johnson & Co., who reside in the city of Raleigh, in the State of North Carolina.

"III. That this action is brought on behalf of this plaintiff, and all others similarly situated and affected by the ordinance hereinafter referred to, who shall in due time come into this action and have themselves made parties, and contribute to the expenses of this suit.

"IV. That on the 13th day of June, 1899, the said city council of Abbeville passed and ratified an ordinance, known as the license ordinance, a copy of which is hereto attached as a part of this complaint, and marked exhibit A.

"V. That said ordinance undertakes to impose upon this plaintiff and other business men of Abbeville a direct license tax, which, under the charter of the city of Abbeville, they have no right to do, said charter only providing in section 8 for imposing a license upon certain occupations therein named, and making no provision for imposing a license upon this plaintiff, or upon any other business or occupation, other than those named in section 8 of said charter.

"VI. That said license ordinance is illegal, oppressive, and absolutely null and void, and is unconstitutional, in that it is levied for the sole purpose of raising revenue to meet the current expenses of the city, as said ordinance so declares, and it imposes a tax upon certain citizens of the city of Abbeville which is not uniform, either in respect to persons or property, said ordinance putting a tax of $10 upon this plaintiff as a cotton buyer, and at the same time exempting cotton buyers who are buying for local mills; also putting a tax of $10 on all cotton seed buyers, except for local mills, which are exempt; putting a tax of $10 upon druggists and undertakers, and allowing other merchants to do business by paying $1 upon the first $1,000 worth of goods

sold, and fifty cents upon each subsequent $1,000 worth
sold; putting a tax of $5 upon lawyers whose income is not
over $1,000, and a tax of $7.50 upon those lawyers whose
income is over one and less than $2,000; putting a tax of
$50 upon each bank, when their capital stock only amounts
to about $75,000 each, and only charging the Abbeville Cot-
ton Mill $75, when their capital is $500,000; putting a tax
of $1 upon all dogs, irrespective of their value; taxing livery
stables running hacks $35, without hacks $25; putting a tax
of $2.50 upon a boarding house with two boarders, and $5
upon one having more than two boarders; and in many
other ways too numerous to mention, making discrimina-
tions both as to persons and property, and putting on said tax
in utter disregard of sec. 6, of art. VIII., of the Constitu-
tion of this State, which provides that municipal corpora-
tions shall be vested with power to assess and collect taxes
for corporate purposes, said taxes to be uniform in respect
to persons and property within the jurisdiction of the body
composing the same; which want of uniformity will more
fully appear by reference to said ordinance, a copy of which
is hereto attached, as above stated, marked exhibit A.

"VII. That said ordinance is also illegal, null and void,
in so far as it seeks to impose a license tax upon a person
buying cotton for non-residents of this State, and upon
cotton seed buyers for non-residents of this State, and at the
same time exempting buyers for local mills, said tax being
contrary to the interstate commerce law and to the Consti-
tution of the United States.

"VII. That said license ordinance is also illegal, null and
void, and contrary to sec. 5, of art. I., of the Constitution
of this State, in that said ordinance, in section 1 of said ordi-
nance, provides: 'That no person, firm or corporation shall
engage in, prosecute or carry on any trade, business, occu-
pation or profession hereinafter mentioned, without having
first paid a special license tax therefor as follows, to wit,
&c.,' and section 4 of the said ordinance provides as follows:
'The city council hereby reserves the right to refuse or re-

voke any license for any cause which may seem to it just;' thus putting it in the power of the city council of Abbeville to abridge the privileges of the citizens of said city, and deprive them of their liberty and property without due process of law, and to deny to any one that they may see fit, the equal protection of the laws.

"IX. That the city council of Abbeville is operating under a special charter, and only has the rights conferred by said charter, and there has never been any vote or election in said city of Abbeville upon the question of surrendering its charter, and becoming incorporated under the general incorporation act of 1896, providing a method by which existing municipal corporations may surrender their charters, and take out new ones.

"X. That the said city council has ordered that the said ordinance go into effect on the first day of October, 1899, and threatens to fine or imprison all persons who do not pay said tax on or by the first day of November, 1899.

"XI. That the question involved in this action is one of common and general interest to many persons, and it is impracticable to bring them all before the Court; and, therefore, this action is brought in the name of the plaintiff, for his own benefit and for the benefit of all others similarly situated and affected by said ordinance, and in order to avoid a multiplicity of suits.

"XII. That unless the said city council of Abbeville is enjoined from enforcing said illegal ordinance, irreparable injury will be done to this plaintiff, and all others affected by said ordinance, their rights and immunities as citizens will be abridged, and their property will be taken from them without due process of law.

"XIII. That the plaintiff is without adequate remedy unless this honorable Court enjoins said city council from enforcing said ordinance as they are threatening to do, said ordinance providing that all classes of persons therein named failing or refusing to pay said tax, shall be fined not less than $2, or more than $100, or be imprisoned not less than two

days, nor more than twenty days, for every day such busi-
ness is carried on without such license, and the law not pro-
viding any remedy against a city council for false imprison-
ment.    Wherefore the plaintiff prays judgment that the city
council of Abbeville be perpetually enjoined and restrained
from attempting to enforce said ordinance, and for such
other and further relief as may be just. and proper."

The following is the decree on Circuit:
"This action is brought in behalf of this plaintiff, and all
others similarly situated and affected by the ordinance here-
inafter referred to, who shall in due time come into this
action and have themselves made parties, and contribute to
the expense of this suit.    The judgment demanded is that
the city council of Abbeville be perpetually enjoined and re-
strained from attempting to enforce the ordinance referred
to, and such other relief as may be proper.  The amended
complaint was served upon defendant on October 16th,
1899.    The summons and original complaint were not read
at the hearing herein, and were not submitted to me with the
record in the cause.    I cannot, therefore, state the date of
the original complaint, when it was filed, or when it was
served upon defendant.    I find an order of his Honor,
Judge Ernest Gary, as presiding Judge, dated October 5th,
1899, which enjoins and restrains the defendant from en-
forcing said ordinance against the plaintiff 'until the hear-
ing of this case upon its merits.'    The answer of the defend-
ant is dated November 7th, 1899.    A number of persons
were, by order of Court, permitted to come into this action
as plaintiffs, and the restraining order, above stated, was
extended so as to include them.    On the 13th day of June,
1899, the defendant, the city council of Abbeville, passed
and ratified an ordinance, known as the 'License Ordinance.'
The preamble, or beginning, of said ordinance is as follows:
'*For the purpose of meeting* in part the current expenses of
the city government of the city of Abbeville, S. C., for the
fiscal year commencing January 1, 1900, and to meet in part

such other indebtedness of the city of Abbeville, S. C., as may become due in said fiscal year. Therefore, be it ordained by the city council of Abbeville, S. C., and by authority of the same : Section 1. That no person, firm or corporation shall engage in, prosecute or carry on any trade, business, occupation or profession hereinafter mentioned, without having first paid a special license tax therefor as follows, to wit: Agents, for enlarging pictures $1 per day, per month $10.' Then follows, in alphabetical order, a list of one hundred and fifteen or twenty kinds of trade, business, occupation or professions, and the amount of the tax upon each. The plaintiff alleges that he 'is engaged in the business of general merchandising and buying cotton for Charles E. Johnson & Co., who reside in the city of Raleigh, in the State of North Carolina.' The provisions of the ordinance in reference to merchants and cotton buyers are: 'Merchants shall pay license according to the following schedule of gross sales and prices upon sworn returns : sales amounting to $1,000 or under, the sum of $1 ; on each additional $1,000 of sales or fractional part thereof, the sum of fifty cents. Cotton buyer, except for local mills, $10.' Returning to the ordinance. 'Section 2. Any person or persons carrying on or prosecuting any business or occupation, or running any establishment named in this or preceding sections, without first having taken out a license therefor, shall be fined (except in cases where special penalties are imposed) not less than $2 nor more than $100, or be imprisoned not less than two days nor more than twenty days, for each and every day such business is carried on without such license. That no license shall be used for a less period than one year (unless otherwise specified), dated from the first day of the month in which the same is issued, and it shall be the duty of the clerk of council to see that licenses and fees are imposed and paid, and to promptly report any and all cases of failure to do so. Section 3. That for any business, occupation or profession not enumerated in the foregoing section, the license shall be regulated and imposed by

26—59

the city council at any meeting of the same.   Section 4.  The city council hereby reserves the right to refuse or revoke any license for any cause which may seem to it just.'   Section 5 refers to 'false or fraudulent returns,' necessary or required by the ordinance, and the punishment therefor. 'Section 6.  That any person, firm or corporation carrying on or prosecuting any trade, business, occupation or profession, or running any establishment named in this ordinance, or upon which a license may hereafter be imposed by the city council, without first having taken out a license therefor, shall be fined (except in cases where special penalties are imposed) not less than $2 nor more than $100, or be imprisoned not less than two days nor more than thirty days in the county or city prison, for each and every day such business, occupation or profession is carried on without such license.   Section 7.  That this ordinance shall go into effect on the first day of October, 1899, and all persons, firms, corporations or professions, not conforming to its requirements shall be liable to the penalties herein imposed from and after said last mentioned date.'   Plaintiff, in paragraph 5 of his complaint, alleges: 'That said ordinance undertakes to impose upon this plaintiff and other business men of Abbeville a direct license tax, which, under the charter of the city of Abbeville, they have no right to do, said charter only providing in section 8 for imposing a license upon certain occupations therein named, and making no provision for imposing a license upon this plaintiff, or upon any other business or occupation, other than those named in section 8 of said charter.'   The charter of the city of Abbeville is contained in 'An act to incorporate the city of Abbeville,' approved January 5th, 1895, see Stat. of S. C., vol. 21, p. 1134.   Sec. 8 of said act or charter reads: 'Section 8.  That the said city council may grant or refuse licenses to keepers of livery stables, drivers of public drays, hacks and vehicles kept for hire, butchers, auctioneers, peddlers, itinerant tradesmen, keepers of billiard tables, ten-pin alleys, or any other kind of game, exhibitions of skill or chance within said cor-

poration; and the said city council may impose a license fee on any of the said occupants, and also on any person who keeps a store, shop, office or other place of business and carries on his trade, profession or business in said city, but resides and holds his property beyond the limits of said city, thus escaping his or her just share of the burdens of the city government; and said city council may enforce the collection of said license fees, which shall be turned into the city treasury.' The plaintiff alleges that he is a merchant and cotton buyer, residing in the city of Abbeville. A number of the parties who have intervened in this action and are now plaintiffs herein, are not engaged in any business menin said sec. 8, nor are they included in the provisions thereof. If this was the only law upon this subject, it is plain that the city council of Abbeville could not impose a license fee or tax upon persons other than those enumerated in said section, or upon occupations or kinds of business not therein specified; for 'a municipal corporation in this State, can only exercise power with which it is clothed by our General Assembly,' *Mauldin* v. *City Council,* 42 S. C., 298; *State* v. *Maysville,* 12 S. C., 76. The Constitution of this State, adopted in 1895, contains a number of provisions not found in the Constitution of 1868. The Constitution of 1868 contained no provisions in reference to license fees or taxes, such as are found in the Constitution of 1895. Yet, under the Constitution of 1868, the Supreme Court repeatedly held that the power to raise revenue by a license tax on business, given by statute to city council, violates no provision of said Constitution. The Supreme Court, in *Information* v. *Oliver,* 21 S. C., 325, said: 'We think that it would result in no good to reopen the argument and renew the discussion. It concerns the interests of all that the law and its interpretation should be settled.' This language was cited, with approval, in *Information* v. *Jager,* 29 S. C., 443. If such was the law under the Constitution of 1868, it must be the law now, because the Constitution of 1895 has numerous provisions which afford additional supports for the cases

referred to.   Indeed, after reading the decisions upon this subject, and the provisions of the Constitution of 1895, we are impressed with the idea that the framers of the Constitution of 1895 prepared several of the provisions of that instrument with reference to said decisions, and intended to incorporate in the new Constitution the law as declared by the Courts.    I shall call attention to two provisions of the Constitution of 1895.    In the last proviso, in sec. 1, of art. X., entitled 'Finance and Taxation,' we find, 'the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business.'    This is an unequivocal grant of power to the General Assembly, giving to that body a power which, under the Constitution of 1868, had been questioned.    Sec. 6, of art. VIII., Con. of 1895, entitled 'Municipal corporations and police regulations,' provides: "The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes. * * * License or privileged taxes imposed shall be graduated so as to secure a just imposition of such tax upon the classes subject thereto.'    It will be noted that the 'License or privileged taxes' are to be imposed with reference to *the classes subject thereto.'*    Paragraph first, sec. 11, art. XVII., of the Con. of 1895, provides: 'That all laws in force in this State, at the time of the adoption of this Constitution, not inconsistent therewith and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly or expire by their own limitation.'    In *Mauldin* v. *City Council,* 42 S. C., p. 299, it is said, in the opinion of Mr. Justice Pope, that 'the power of taxation may be given a municipal corporation, but such power when exercised by such municipal corporation must not only be exercised according to the charter thereof; but also within the limits of the Constitution of the State.'    This language was used in reference to the Constitution of 1868; but, assuming that it is applicable to this case under the Constitution of 1895, let us see if the city council of Abbeville has the power to im-

pose license fees and taxes, and whether or not its ordinance is in conformity to law.    Sec. 1, art. VIII., Constitution of 1895, is as follows: 'The General Assembly shall provide by general laws for the organization and classification of municipal corporations.    The powers of each class shall be defined so that no such corporations shall have any power or be subject to any restrictions other than all corporations of the same class.    Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine.'    In accordance with the above stated provision of the Constitution, the General Assembly of this State, on March 5th, 1896, passed an act, entitled 'An act to provide for the incorporation of towns of not less than one thousand nor more than five thousand inhabitants.'  XXII., Stat., p. 67.    This act, in sec. 1, provides, 'That citizens of any proposed town of this State * * * desiring to be incorporated shall present to the secretary of State, &c.,' a petition.    This refers to a *'proposed town,'* one not yet in existence.    Sec. 25 of this act provides that, 'Any town * * * already chartered which is desirous of surrendering its charter and accepting incorporation under this act * * * may be incorporated under this act.'    The terms of this section are, manifestly, permissory.    Sec. 12 of said act reads, 'That said council may, and they are hereby, authorized annually to require by ordinance the payment of such reasonable sums of money as a license tax by any person or persons, corporation or corporations, engaged or intending to engage in any calling, business, occupation or profession, in whole or in part, within the limits of said town, except those engaged in the calling or profession of teachers or ministers of the gospel.    They shall have power to collect license or taxes from all persons representing publicly within the limits of said town, for gain or reward, any plays or shows of whatever nature or kind soever; and said town council are hereby authorized and empowered to pass such ordinances as are necessary to give full force and effect to

this section, and to punish delinquents thereunder.'  It was admitted upon the argument that the city of Abbeville has more than 1,000 and less than 5,000 inhabitants.  On March 25, 1897, the General Assembly passed 'an act relating to the powers of certain corporations' (22 Stat., p. 464), as follows: 'Section 1. That all municipal corporations of this State having a population of not less than 1,000 inhabitants and not more than 5,000 inhabitants are hereby endowed with the power enumerated in an act of the General Assembly, approved 5th March, 1896, and numbered 36, &c.  Section 2. That the powers hereby conferred are in addition to those already enjoyed by the said municipal corporations under their respective charters.'  Act No. 36, 22 Stat., p. 67, and 'approved 5th March, 1896,' is the act hereinbefore referred to, and is entitled 'an act to provide for the incorporation of towns of not less than one thousand inhabitants.'  I think, and so hold, the words, "That all municipal corporations of this State,' as used in sec. 1 of the 'act relating to the power of certain corporations,' refers to and includes municipal corporations existing under special charters, as well as those incorporated under the general act of 1896, *supra.*  The construction, if the plain and unambiguous words of sec. 1 need construction, is supported and sustained by sec. 2, which declares 'that the powers hereby (in sec. 1) conferred are in addition to those already enjoyed * * * under their respective charters.'  The word 'charters' is plural.  Under the general law there is but one 'charter' or form of 'charter,' and we must assume that the act refers to all charters coming within the terms of the act. This view finds further and conclusive support in the word 'respective.'  It would be without force or effect if the act is construed to refer only to charters under the act of 1896. The act of 1897 'endowed' the city council of Abbeville 'with the powers' enumerated in the act of 1896, numbered 36; including sec. 12, which authorizes said council to impose certain license taxes.  I have heretofore cited said sec. 12 in full.  The act of 1897, entitled 'an act relating to the

powers of certain corporations,' was amended by 'an act to amend an act entitled an act relating to the powers of certain corporations,' approved 2d day of March, 1899. See acts of 1899, p. 53. This act was approved March 3d, 1899. It amends the act of 1897 by striking out 'five' and inserting 'ten,' making the maximum number of inhabitants 10,000 instead of 5,000. By an act of the General Assembly, approved March 2d, 1899, and entitled 'an act to provide a general law for the amendment of town and city charters' (act of 1899, p. 70), it is provided: 'That on and after the approval of this act, the charter or articles of incorporation of any city or town in this State, whether such city or town was originally incorporated by act of the General Assembly or under the general law by the secretary of State, may be amended in any particular, not inconsistent with the Constitution and laws of the State, in the following manner.' The 'manner' is then stated, viz: by petition, vote, &c. Section 2 of this act repeals all acts and parts of acts inconsistent with this act.

"The act just cited cannot affect the city council of Abbeville, and, *inter alia,* for the following reasons: The act is prospective. It has no effect upon past charters, unless those charters were amended after its passage. It is permissive and directory when called into use. It does not purport to repeal any existing charter or amendment thereof. The charter of the city of Abbeville was, as we have seen, approved in 1895, and amended in 1897. The city council of Abbeville are not trying to have the charter of the city amended, the council is trying to enforce charter powers given to the city before the passage of the act of 1899. It is contended that the act of 1896, entitled 'an act to provide for the incorporation of towns of not less than 1,000 nor more than 5,000 inhabitants,' and the act of 1897, entitled 'an act relating to the powers of certain corporations,' are unconstitutional, in that they relate to more than one subject not enumerated or expressed in their titles. I do not see any objection to the former act. The objection to the act of

1897 is that it legislated as to two subjects: the one being as to charters for towns of not less than 1,000 and more than 5,000 inhabitants; and the other being charters for towns of not less than 200 and not more than 1,000 inhibatants; and, also, in that it seeks to amend charters generally.    Art. III., sec. 17, of the Constitution of 1895, is as follows: 'Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.'    The same provision is contained in the Constitution of 1868. See art. II., sec. 20.    The Court has construed this section 'As we have said in *Charleston* v. *Oliver* (16 S. C., 56), upon the authority of Mr. Justice Cooley, "there has been, and ought to be, a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construction."    Hence, when a question, under this clause of the Constitution, is presented for adjudication, we are bound to take a liberal and enlarged view, and if practicable bring the legislation which is assailed as unconstitutional within the limits prescribed by the supreme law of the land.'    This case is cited with approval in *State* v. *Chester,* 39 S. C., p. 327, where the authorities are collated.    In *Ex parte Bacot,* 36 S. C., 135, it was held that an act entitled 'an act to provide for the formation of certain corporations under general laws,' was not subject to the objection herein presented.    The Court says: 'In the very nature various matters were to be considered under it, somewhat like an appropriation act, with a general title covering many particulars.    The "subject" was the formation of certain corporations, and it would seem that the right to form corporations would include the power to be given to such corporations.    How else could they be formed?'    The 'subject' of the act of 1897, *supra,* was the regulating of the powers of certain corporations, and it would seem that the right to regulate the powers of corporations would include the powers to be given to such corporations.    Art. III., sec. 34, of the Constitution is as follows: 'The General As-

sembly of this State shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: * * * III. To incorporate cities, towns or villages, or change, amend or extend the charter thereof. * * * XII. The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations.' The General Assembly, under these provisions, could only amend the charter of Abbeville by a general law, and that is the nature of the act of 1897. The body of the act refers to municipal corporations and nothing else; therefore, it relates to but one subject. The argument of counsel is based upon the idea, that inasmuch as the act refers to two former acts, it must refer to two subjects. This deduction is neither logical nor sound. The requirement of the Constitution that an act shall relate to but one subject, is complied with when the act relates to a part of a subject. It is not necessary, nor is it usual, for an act to exhaust a subject. If several acts relate to several phases of the same subject, the General Assembly may legislate, in one act, upon several of said phases in a subsequent act. I hold that the General Assembly can, by an amendatory act, amend several acts, by proper reference thereto, provided all of the acts relate to the same subject. I think that the act of 1897 'expresses' in its title, the subject of the act. In addition to the authorities cited, I would also refer to Endlich on Stat., ed. 1888, sec. 524, p. 740. *People* v. *Mahony,* 13 Mich., 481:

"It is alleged in paragraph 6 of the complaint that the ordinance in question was passed 'in utter disregard of sec. 6, of art. VIII., of the Constitution, which provides that municipal corporations shall be vested with powers to assess and collect taxes to be uniform in respect to persons and property within the jurisdiction of the body composing the same.' The 'want of uniformity' consists in alleged 'discriminations as to persons and property.' I will refer to this allegation further on, when considering the alleged 'discriminations,' but in passing, will say that the complaint

cites only a part of said section, and omits an entire and important sentence, containing the fundamental law upon the subject of 'license or privileged taxes.' Art. VIII., sec. 6, is as follows: 'The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes, said taxes to be uniform in respect to persons and property within the jurisdiction of the body composing the same, and all the property, except such as is exempt by law, within the limits of cities and towns, shall be taxed for the payment of debts contracted under authority of law. License or privileged taxes imposed shall be graduated so as to secure a just imposition of such tax upon the classes subject thereto.' It is the duty of the Court to construe, not make, the Constitution. That instrument authorizes municipal corporations to impose two kinds of taxes: 1st. A general or ordinary tax. 2d. License or privileged taxes. We must give force and effect to its provisions. A license or privilege tax has long been in use in this State. 'Strictly speaking, a license of a trade or calling by a municipal corporation is referable to the police power possessed by such bodies, and implies authority to prohibit the exercise of such business, except upon conditions having reference to some end of police regulation. In its simplest form of exercise, as when employed solely for the purpose of regulating avocations of a class tending to disturb public order, health or morality, it is a power totally distinct from that of imposing taxes for the purpose of raising revenue. It has, however, been long employed for the purpose of imposing on a class of avocations to which the exercise of that power particularly relates, embracing places of public entertainment and amusement, taxation for the purpose of revenue of an extraordinary character, based upon the idea that avocations of that class should contribute specially to the support of the government in excess of the burdens borne by the productive industries. In this way it becomes one of the customary modes of raising revenue. The extension of this mode of raising revenue beyond the

sphere of avocations to which the power of police regulation properly related, where circumstances of a peculiar nature rendered it requisite that each particular avocation should have its own rate of taxation, was natural where taxation had divided itself into two methods, the one embracing those subjects of taxation that are capable of being reached by means of an uniform rate, and the other such as could be treated in no other way than by subdivision into two distinct classes, and imposing a separate rate on each of such classes. Avocations of the class to which the power of public regulation properly relates, naturally fall within the class or subject of taxation last named, and the license and form of collecting special taxes, have been frequently extended to embrace all subjects of taxation calling for special rates of taxation.' *State* v. *Columbia, 6* S. C., 6. See, also, *Information* v. *Jager, 29* S. C., 438, and other cases cited. I have cited this case, *State* v. *Columbia, supra,* as showing the origin and growth of license taxes, for two reasons. As this was the only adjudged law of this State, we must assume that the words 'license or privileged taxes,' as used in the Constitution, refer to, and was intended to refer to, licenses and license taxes as they existed at the time of the adoption of the Constitution. Not only in the law, but also in its popular meaning, a license tax was well understood. The second reason for the above citation is, that it was suggested and argued that the words of the Constitution might and should be construed as relating to the police powers of municipal corporations, and not for the purpose of raising revenue. If there was any doubt upon this subject (and there was none), the Constitution has dissolved that doubt now. I hold that the Constitution authorizes and empowers the imposition of licenses or privileged taxes for the purpose of raising revenue, and that, so far as the section under consideration is concerned, the police powers of municipal corporations are in no wise changed. The ordinance in question provides : 'Banks $50; cotton factory $75.' The complaint alleges that the ordinance 'is illegal, oppres-

sive and absolutely null and void, and is unconstitutional, in
that it is levied for the sole purpose of raising revenue to
meet the current expenses of the city, as said ordinance so
declares, and it imposes a tax upon certain citizens of the
city of Abbeville, which is not uniform either in respect to
person or property, said ordinance putting a tax of $50 upon
each bank, when their total capital only amounts to about
$75,000 each, and only charging the Abbeville Cotton Mill
$75, when their capital is $500,000.'    Passing by the allega-
tions as to the unconstitutionality of the ordinance, as set
forth in the above quotation, and which have already been
discussed, we will consider the allegations alleging illegal
discrimination, as illustrated by the bank and the cotton mill.
The underlying error in the complaint, and the arguments
in support of its allegations, is in assuming that the require-
ment in the first sentence of art. VIII., sec. 6, viz: 'said taxes
to be uniform in respect to persons and property,' apply to
the last sentence in said section, in reference to licenses.    If
such were the fact, why did not the framers of the Consti-
tution so declare?    It would have been the most natural and
easiest provision to have incorporated 'license or privilege
taxes' in the first sentence, and have left it subject to the
requirements of said sentence.    But the framers of the Con-
stitution not only did not do so, but also took further, dif-
ferent and affirmative action in regard to licenses, as mani-
fested in the plain language of the last sentence of said
section.

"When it is suggested and argued that the 'license or
privileged taxes' should be graduated according to the value
of a plant, the income or the value of the product and sales,
the answer is, the Constitution does not so provide.    Let us
construe the word 'classes' in the last line of said sec. 6.
We might speculate as to the meaning of this word, because,
standing alone, it might be properly construed as referring
to persons or property, one or both.    Taking into view the
Constitution and statutes of our State, as construed by our
Courts and as shown by the practice in this State, I think

that the legislation now in force is a reasonable and practical construction of the word 'classes.' The Constitution permits the General Assembly to empower cities and towns to impose license or privilege taxes upon 'classes,' but when a class is 'subject thereto,' the tax must be graduated, &c. In sec. 12 of the 'act to provide for the incorporation of towns, &c.,' 22 Stat., p. 71, it is provided that the city council may 'require by ordinance the payment' of a license or privilege tax 'by any person or persons, corporation or corporations, engaged or intending to engage in any calling, business, occupation or profession.' The 'classes,' therefore, must be composed of persons or corporations engaged or intending to engage 'in any calling, business, occupation or profession.' A member of a class, as used here, may be thus defined : 1st, a person or corporation; 2d, a calling, &c., and 3d, that person or corporation engaging in that calling, &c. There can be no doubt that a cotton mill and a bank belong to different classes or, certainly, that the council had the power to put them in different classes. Is the 'discrimination' between the mill and bank oppressive? That is a mere allegation of the complaint, denied by the answer, and supported by no evidence. The city council is authorized and empowered to determine such matter. In the absence of proof· to the contrary, I must assume that the city council so graduated these license taxes as to secure a just imposition of such taxes upon the mill and the bank. It is not for the plaintiff, or any one of those who have come into this action, to decide such an issue. In view of the many acts and ordinances in this State permitting and regulating license taxes, the amounts charged in the ordinance in question seems neither oppressive nor illegal. The council in 'graduating' these taxes 'so as to secure a just imposition of such tax upon the classes subject thereto,' may, and I assume did, take into consideration, the calling, business, &c., the character of such calling, the value of same, and everything connected therewith. Again, and while upon the subject of 'classes,' I will refer to the provisions thereof in reference

to merchants. It reads: 'Merchants shall pay license according to the following schedule of gross sales and prices upon sworn returns: sales amounting to $1,000 or under, the sum of $1; on each additional $1,000 of sales or fractional part thereof, the sum of fifty cents.' This provision has long been in use in this State. I think and so hold that this provision is constitutional. The objection that the requirement as to 'sworn returns' is illegal, because inquisitorial, and calculated to expose one's business, is wanting in support. The rule is, all taxpayers swear to their returns of taxable property, and in this instance, the merchants are required to do what other taxpayers do. The law has, wisely and necessarily, left much to the legal discretion of town and city councils. There are poor and rich merchants, it might and would be unjust to charge each the same privilege tax; therefore, the license is a 'just imposition' when each merchant is called upon to pay according to the amount of his 'gross sales and prices.' If there is, or can be, any objection to this method of licensing merchants, it is easy to place another construction upon this provision which makes it legal and valid. Merchant is a general name. There are many kinds of merchants, grocers, dry goods, &c. One or more classes of merchants, dealing in one commodity, might be put into one class; while other merchants, dealing in other commodities, might be put in another class. This might be the only way in which the tax imposed on each class could be graduated so as to secure a just imposition of such tax upon each of said classes. This would be legal. So, in securing a just imposition of a license tax, it may be necessary to subdivide persons engaged in one calling into classes, and tax each included in such subdivision so much. These subdivisions, so called here merely for the purpose of illustration, would, under the law, be each a *class*. We must have regard to the substance, and not the form of the ordinance. It really makes classes of such merchants according to their sales. I do not mean to hold, that the same merchant could be taxed double, or twice, upon the same

calling or business.    For instance, a druggist is a merchant; but he could not be taxed upon his gross sales first as a merchant and then as a druggist.    That would be illegal. Again, there are 'classes' upon which a graduated tax, according to incomes or gross sales, or moneys collected, cannot be imposed.    The 'calling, business, occupation or profession' of such classes may be of such nature as to preclude such a method or system.    In such cases, I think that the city council had the legal right, in their legal discretion, to impose a fixed tax upon each member of each of such classes, and make each of such members pay a tax similar in amount and in other respects.

"Paragraph VIII. of complaint alleges : 'That said license ordinance is also illegal, null and void, and contrary to sec. 5. of art. I., of the Constitution of this State, in that said ordinance, in section 1 of said ordinance, provides, "That no person, firm or corporation shall engage in, prosecute or carry on any trade, business, occupation or profession hereinafter mentioned, without having first paid a special license tax therefor, as follows : to wit, &c.," and section 4 of said ordinance provides as follows : "The city council hereby reserved the right to refuse or revoke any license for any cause which may seem to it just," thus putting it in the power of the city council of Abbeville to abridge the privileges of the citizens of said city, and deprive them of their liberty and property without due process of law, and to deny to any one that they may see fit the equal protection of the laws.'    I think that section is, as alleged, invalid and illegal.    The city council legislate by way of ordinance, and can only ordain such ordinances as the law permits them to make.    There is no law authorizing said council 'to revoke any license for any cause which may seem to it just.'    There may be causes, legal causes, for which council might revoke a license; but certainly 'any cause' which in its opinion, irrespective of law, may seem to it 'just,' is beyond the limits of its power, and, therefore, without warrant of law.    But this is a speculative question.    Council has not 'refused' or 'revoked' any

license. for any cause 'which seemed to it to be just.' It will be time enough to consider such refusal or revocation when that issue is presented. Again, this sec. 4 may be stricken out, and it would not destroy the entire ordinance, nor seriously interfere with the enforcement of said ordinance.

"The complaint, paragraph X., alleges: 'That the said city council has ordered that the said ordinance go into effect on the first day of October, 1899, and threatens to fine or imprison all persons who do not pay said tax on or by the first day of November, 1899.' There is no legal reason why the said city council, under the ordinance in question, should not carry out the 'threats,' or the provisions of said ordinance, and 'fine or imprison' the persons referred to. I shall not prolong this decree by a full discussion of this question. I think that is settled, and I shall refer to the statutes and a few of the cases upon this subject. The charter of the city of Abbeville, above cited, in sec. 8, which deals with licenses, provides: 'and the said city council may enforce the collection of said license fees, which shall. be turned into the city treasury.' The act of 1896, to provide for the formation of towns, &c., in sec. 12 (22 Stat., p. 71), authorizing council to impose certain license taxes, is as follows: 'and said town council are hereby authorized and empowered to pass such ordinances as are necessary to give full force and effect to this section, and to punish delinquents thereunder.' There may be other statutory or constitutional law to the same effect; but I shall refer to no other. See, also, *State* v. *Hayne,* 4 S. C., 403; *Information* v. *Jager,* 29 S. C., 438; *Charleston* v. *Oliver,* 16 S. C., 47; *Information* v. *Oliver,* 21 S. C., 319. The charter of Abbeville and the act for the formation of towns, &c., authorize and empower the council to ordain the penalties and punishments prescribed in the ordinance.

"Before taking up such of the allegations of plaintiffs as is necessary, let us glance at the law. 'A license tax cannot be deemed unequal because it reaches one occupation only, if it reaches all who follow that occupation.' *State* v. *Har-*

*rington,* 34 Law Rep. Ann., 100; *Ex parte Williams,* 21 L.
R. A., 783; *Banta* v. *Chicago,* 40 L. R. A., 611; *Haskel's
Case,* 32 L. R. A., 527 and 529. 'Imposing on laundrymen
the payment of a license fee of $15 for a steam laundry, $10
for every male person in the business other than that of a
steam laundry, and $25 for a male laundryman employing
one or more other persons, does not grant a monopoly or
have a prohibition effect.' *State* v. *French,* 30 L. R. A.,
415. The brief to this case is full and instructive. Vol. 13,
Ency. of L., 514, *et seq.,* and notes.

"The plaintiff is a resident of the city of Abbeville,. and
engaged in two callings or kinds of business. He is a
merchant and a cotton buyer, but he alleges that he buys cot-
ton for C. E. Johnson & Co., of the State of North Carolina.
The same man or corporation may engage in two separate
and distinct callings, occupations or kinds of business. If
so, he or it must take out the proper license for such, and
pay the proper taxes therefor. Plaintiff is entitled to no
relief, so far as pertains to his being a merchant, and being
required to take out and pay for a license to carry on that
business. The license required of plaintiff as a cotton buyer
depends upon the ordinance. It is as follows: 'Cotton
buyer except for local mills, $10.' I think that this pro-
vision is illegal. Excepting buyers for local mills renders
the provision void. A buyer of cotton for local mills is not
entitled to exemption. Excepting the buyers for local mills
is not graduating the tax, it frees him from the payment
thereof, and, consequently, the tax does not apply to all per-
sons of that class equally. This provision is illegal.

"After the service of the original complaint, but before
the service of the amended complaint, and the answer
thereto, the defendant, the city council, by an ordinance,
duly amended the ordinance mentioned and alleged in the
complaint. Among said amendments the following ap-
pears: 'In lieu of "cotton buyers except for local mills," the
words "except for local mills" are hereby stricken out,' so
that the ordinance as amended reads, 'Cotton buyer, $10.'

27—59

It was argued that the answer could not set up the said amended ordinance to the allegations of the complaint, because the ordinance was amended after the service of the summons and original complaint. Defendant contends that it can plead the amended ordinance because it was amended prior to the service of the amended complaint, and before defendant had answered. It will be noted, that this is not the case of amending an answer; because the original answer pleads the amended ordinance. I shall consider the amended ordinance as before the Court, and for the following, among other reasons: The complaint seeks to enjoin the defendant from the collection of license taxes, and *also* from imposing fines or inflicting punishment upon plaintiffs for failure to comply with the provisions of the ordinance. The complaint deals, therefore, with defendant's jurisdiction in criminal matters, its power to punish by fine or imprisonment. It is clear that the defendant could not punish plaintiff under an ordinance repealed at the time of the trial. *State* v. *Carter*, 28 S. C., 1. The amended ordinance took the place of the old. As held, the original ordinance was illegal, and there was no legal ordinance in this particular until the amended ordinance was adopted. So that, now, it is a purely speculative question as to the original ordinance. It does not now exist, whether its non-existence is due to the inherent illegality or because it is repealed, is a matter of no consequence. Plaintiff is in no danger from the original ordinance; but I will enjoin the enforcement of this particular provision therein. I do not mean, however, to enjoin the enforcement of the amended ordinance; because, except as pleaded in the answer, it is not before me for adjudication. The construction upon that ordinance is not involved in this action.

"Among the parties who have been made plaintiffs in this action, under the order of the Court, are a number of lawyers. They allege that they are taxpayers and residents of the city of Abbeville, and that 'they are discriminated against in the ordinance imposing said license tax.' * * *

'That the tax imposed upon attorneys at law is a license of $5 on some attorneys, and $7.50 on others.' The provisions of the ordinance in reference to lawyers are, 'Lawyer, whose income does not exceed $1,000, each $5.' 'Lawyer, whose income is from $1,000 to $2,000, each $7.50.' These words were, by the amendatory ordinance above referred to, stricken out, and the words, 'Lawyers, each $5,' inserted in lieu thereof. I need not repeat what I have said in reference to this amendatory ordinance or the effect thereof. But, in passing, it may be well to say, that I can see no infirmity in the ordinance as it originally stood. If merchants be classified according to the amounts of business done by them, why should not the same rule be applied to lawyers? The principle is the same, and the facts analogous. But the classification is a matter left to the legal discretion of the city council. It could put all lawyers into one class, or could divide them into two classes, and, in either instance, the presumption would be that the action was legal. However, as the original ordinance, by act of council, has ceased to be of force, I will enjoin any attempt to enforce said original provision, and, as said, leave the amended ordinance alone.

"A. M. Hill & Sons came in as plaintiffs. Their alleged grievance is that they 'Are required to pay as livery stable keepers, and are required to pay a further tax on their hacks, which are simply a part of their livery business, while this tax is not put on other persons running a livery business.' The ordinance provides for: 'Street hack or carriage, $5; street wagon or dray, two horse, $5; street wagon or dray, one horse, $2.50; stable, livery, sale and feed and running hacks and drays, $35; stable, livery, sale and feed, $25.' As to the allegation that the tax imposed upon Hill & Sons 'Is not imposed on other persons running a livery business,' it is denied by the answer, and there is no proof in support thereof, except such, if any, as appears upon the face of the ordinance. I can see no illegality in the provisions above cited. They are all in favor of the citizen. If a man wants

to run a 'street hack,' or a 'street wagon,' or a 'street dray,' and not run a livery stable, he can do so; because such hacks, carriages, wagons and drays are each put in a separate class, and a certain tax provided for each. If another man wishes to run a 'stable, livery, sale and feed,' and not run hacks and drays, he can do so; because he is included in a class established by the ordinance. If a third man wants to engage in all of these occupations, he can do so; because this ordinance establishes one general class authorizing him to do so; but for this he must pay a higher license tax.

"As to the plaintiff, J. L. Simpson, it is alleged in the answer, and was admitted at this argument, that he was summoned before the city council to show cause why he had not paid a license tax under the provision of the ordinance, 'Agents, sewing machines, $15,' and his case was dismissed upon his own statement that he is not doing business as a sewing machine agent in the city of Abbeville. He, therefore, has no standing in the case. But as the parties wish to test this ordinance, I hold a sewing machine agent may be legally put in a separate class by the city council, and that 'other agents for retailing goods only,' for example, 'agent for merchant tailor, manufacturer,' may be put into another class by the city council, and a different tax imposed on each. I do not mean to say that council could abuse their power in this or any other respect. I am speaking of the legal discretion of council, and I must assume, as there is nothing to rebut that presumption, that council acted with legal discretion in the premises.

"J. W. McKee and E. H. Richey attack the ordinance because they allege that they are charged a license tax for selling meat in the city of Abbeville, although they are farmers and stock raisers and do not reside in the city of Abbeville, and have a right to sell their products in said city. Of course, the city council could not, by ordinance or otherwise, violate the provision of the 'act to amend the charters of cities and towns in regard to the sale of meat,' approved February 7th, 1896, see 22 Stat., pp. 91, and *City Council*

*v. Roberts,* 55 S. C., 374. The words above stated, setting out the grievance of McKee and Richey, are not sufficient to bring them within the terms of said act. These words are denied in the answer. The burden of proof was upon McKee and Richey, and there is no proof in support of their allegations even as made. It was admitted upon the argument that these parties sold meats not 'produced or grown' by them in the city of Abbeville.

"J. L. Hill complained that he is charged a tax of $5 as a 'cotton weigher,' under the ordinance, 'and yet' the city council allows the cotton mill 'to weigh all the cotton they may choose to weigh without any license whatever.' This is a very broad and loose allegation. In this matter the return to the rule alleges, 'There is a license of $5 imposed on all cotton weighers, and the cotton mill is not exempt from tax as a cotton weigher. That this respondent is informed that the cotton mill does not weigh cotton for the public or for compensation, and that the said J. L. Hill weighs a large part of the cotton purchased by the mill.' All of the pleadings in this case, to wit: 'amended complaint, petitions to be made parties, returns to said petitions, orders of injunctions, answer, etc., were presented to the Court at the hearing, and submitted with the record. Counsel in their arguments referred to and used these papers, and save in one or two matters, viz: the facts in regard to J. W. McKee and E. H. Richey, as butchers, and possibly one or two other facts not involved, treated these papers as evidence. There was no testimony taken, and the case was heard upon the pleadings and papers. J. L. Hill has no legal cause of complaint, because as I construe the ordinance a 'cotton weigher,' in the ordinance, means such an one as weighs for the public or for compensation, and not a person or corporation weighing their own cotton, or cotton purchased for his or their own use.

"J. L. Roche's allegations as to the provisions of the ordinance are as follows: 'Cotton seed buyers, except for local

mills, $10,' are sustained, for reasons above, and is entitled
to an injunction against the enforcement of this provision.

"J. A. Dickson's objections are overruled.    See authori-
ties cited.    Having a license from State to practice dentistry
does not exempt him from the provisions of the ordinance.

"I have already considered the questions of requiring the
same person, engaged in two occupations, to pay a license
tax for each occupation.

"A person who, under the ordinance, is liable to a license
tax, cannot legally object to paying same; because a license
tax is not imposed upon some other person engaged in a
different occupation.    The city council is not required to
charge every person engaged in any occupation, business,
calling or profession a license tax.    If I have overlooked
any material allegation as alleged by any one of the plain-
tiffs, it is accidental, due to hurry, and because of the pres-
sure of official duties.    I have not, by name, taken up the
particular case of each plaintiff; but have grouped their alle-
gations, and then considered all of the real issues in the
cause.    As I hold that the ordinance, as an entire instru-
ment, is not void, but that certain provisions thereof are
void, it would be improper to pass upon provisions of said
ordinance which does not affect any of the plaintiffs, and
are not properly before the Court for determination.    This
case, and the judgment herein, cannot bind persons not
parties to the cause, and as to such persons no opinion is ex-
pressed.    I must confine this judgment to the parties and
issues before the Court.

"Wherefore, it is ordered, adjudged and decreed, that the
defendant, the city council of Abbeville, their agents, officers
and servants, be, and hereby are, perpetually enjoined and
restrained from enforcing or attempting to enforce the fol-
lowing provisions of the license ordinance herein before re-
ferred to, to wit: 1. 'Cotton seed buyers, except for local
mills, $10.'    2. 'Cotton buyers, except for local mills, $10.'
3. 'Lawyers, whose income does not exceed $1,000, each

$5.'   4. 'Lawyers, whose income is from $1,000 to $2,000, each $7.50.'

"It is further ordered, adjudged and decreed, that the summons and complaint herein be, and hereby is, dismissed as to all the plaintiffs, saving and excepting such of the plaintiffs as are affected by the foregoing order and judgment; but as to such plaintiffs coming within the relief adjudged, it is retained; further, that each and all of the restraining orders heretofore granted in this action be, and hereby are, revoked, vacated and discharged, except as the same are made perpetual by the judgment herein; and it is further ordered, that each of the parties hereto pay his or its own costs and disbursements."

From this decree, the plaintiffs appeal.

*Messrs. Frank B. Gary* and *Wm. N. Graydon,* for appellants, cite: *The act of 1897, p. 464, taken with the act of 1896, p. 67, does not confer on city of Abbeville power to pass this ordinance:* 49 S. C., 337; 22 Fed. R., 701. *If the city has thereunder such power, then it is null and void:* Con., art. VIII., sec. 6; art. X., sec. 1. *Act of 1897 refers to more than one subject, and is unconstitutional:* Acts of 1896, No. 37; 3 Park. Co. Rep., 299; 35 N. Y., 452. *It is also contrary to sec. 1, art. VIII., of Con.*

*Mr. M. P. DeBruhl,* contra, cites: *Has city council of Abbeville the power to enforce license taxes:* 21 Stat., 1134; 22 Stat., 464, 67; 23 Stat., 70. *Act of 1897 is not unconstitutional, as it does not relate to more than one subject:* 13 Mich., 481; 39 S. C., 137; 36 S. C., 135; art. III., sec. 34, Con.; art. VIII., sec. 6. *License taxes have long since been in use in this State:* 6 S. C., 1; 29 S. C., 438; 21 S. C., 325; 40 L. R. A., 611. *Has this power been exercised in conformity to the Constitution, and have such taxes been properly graduated:* Art. VIII., sec. 6, Con.; 30 L. R. A., 427; 32 L. R. A., 529; 32 Minn., 364; 30 L. R. A., 432; 34 Am.

Rep., 743; 16 Cal., 119; 31 Kan., 157; 30 L. R. A., 419; 21 L. R. A., 415; 40 L. R. A., 617; 34 L. R. A., 100.

March 9, 1901. The opinion of the Court was delivered by

JUDGE TOWNSEND, *acting Associate Justice, in place of* JUSTICE GARY, *disqualified.* This action was commenced by the plaintiff for himself and all others who would join as plaintiffs, to enjoin the enforcement of· a certain ordinance passed by the city council of Abbeville on ·the 13th June, 1899, on the ground that it was illegal, null and void and unconstitutional. After the original complaint had been served and a temporary injunction issued, several parties came in and were made parties by order of the Court. An amended complaint was then served, setting out the ordinance in question as originally passed. The defendant then served its answer, alleging that since the serving of the original complaint the ordinance in question had been amended, and among other things set up the amended ordinance. The amendment related to the license tax on lawyers and on cotton buyers and on cotton seed buyers. All lawyers were not taxed alike in the original ordinance; some were taxed $5 and others $7.50. Cotton buyers and cotton seed buyers were not taxed the same, for whilst buyers for non-residents were taxed $10 each, buyers for local mills were exempt from the tax, thus making a discrimination. The amendment changed· the ordinance in these respects so that all lawyers were taxed the same, and all cotton buyers the same, and all cotton seed buyers the same. Both ordinances are printed in the "Case" and are exactly the same, except as to the provisions last above mentioned, which have been amended. The amended ordinance makes no discrimination among lawyers, cotton buyers and cotton seed buyers, respectively, and in the same words as the original (except as to the amended parts) provides for a license tax on a number of occupations, professions and kinds of business. For instance, agents for enlarging pictures are taxed $1 per

day or $10 per month; agents retailing goods are taxed $1 per day of $10 per month; agents or dealers in pianos or organs, $15; bakers not taxed; banks, $50; bootblacks, $1; cotton mills, $75; keepers of livery, sale and feed stables, $25; keepers of livery, feed and sale stables, with hacks, $35, and so on. The list is long, and embraces probably one hundred or more different occupations, professions and kinds of business. The plaintiff contends that the ordinance is illegal, null and void and unconstitutional, for the various reasons set out in his complaint, which will form part of the report of this case. He contends, in the first place, that the city council of Abbeville had no power to pass the ordinance; and, in the second place, that the ordinance as passed provides for taxes that are not uniform as to persons and property, and makes unjust and illegal discriminations among those engaged in the different occupations and kinds of business. He refers especially to his own case. He alleges that he is taxed both as a cotton buyer and as a merchant. He alludes, also, to the tax of $50 on the bank, with only $75,000 capital, while the cotton mill, with half a million capital, is taxed only $75; and to keepers of livery, feed and sale stables, who are taxed $25, while a keeper of a livery, feed and sale stable, with hacks, is taxed $35. He mentions the above among others as instances of wrongful classification of persons engaged in business, and of unjust imposition of the license tax. The Circuit Judge construed only the original ordinance as it was before it was amended. He sustained all of its provisions except the three hereinbefore mentioned, which related to lawyers, cotton buyers and cotton seed buyers. These three he adjudged to be illegal, because of the discrimination made by them amongst lawyers, cotton buyers and cotton seed buyers, and enjoined the enforcement of them.

The plaintiff appealed to this Court on numerous exceptions, which raise only two general questions, which are well and correctly expressed in the brief of respondent's counsel, as follows: First. Has the city council of Abbeville power

to impose license or privilege taxes? Second. Has this power been exercised in a lawful and constitutional manner, and the license graduated so as to secure a just imposition of such taxes upon the classes subject thereto?

These two questions cover the entire contention, which appears to depend largely upon the construction of certain statutes of the General Assembly and of certain provisions of the Constitution of our State. The Circuit Judge, in his elaborate and well considered decree, which will form a part of the report of this case, answered both of these questions substantially in the affirmative, and as this Court agrees with the Circuit Judge, it will, we think, not be necessary to go over the whole ground again.

The first question relates to the power of the city council to pass the ordinance in question. Sec. 6, of art. VIII., of the Constitution, empowers cities and towns to assess and collect taxes for corporate purposes, said taxes to be uniform in respect to persons and property. Sec. 1, art. X., gives the General Assembly power to provide for a graduated license on occupations and business. The constitutional authority, therefore, to levy license tax is undoubted, and it is clear that the General Assembly was not bound to do more than *provide* for a license tax. The cities and towns are allowed to graduate the tax.

License and privilege taxes have been in use for years in this State, and this Court has determined that municipal corporations may, when authorized by the legislature, impose such taxes either for the purpose of raising revenue or as a police regulation. *State* v. *Columbia,* 6 S. C., 1; *Information* v. *Oliver,* 21 S. C., 325. The city of Abbeville was chartered by an act of the legislature, approved January 5th, 1895 (Stat. S. C., vol. 21, p. 1134). Sec. 8 of this act gives power to the city to impose license taxes on certain occupations, such as keepers of livery stables, public drays, hacks, butchers and some others. The act approved March 5th, 1896, No. 36 (22 Stat., 67), gave to such towns as proposed to form under its provisions and

to such as would surrender their charters already obtained, and form anew under its provisions, power to impose license taxes. Said act simply confers on municipal corporations coming within the provision of the act, the power to impose license taxes. It does not *impose* the taxes or compel such corporations to do so. It merely authorizes them to require by ordinance the payment of such license taxes. It is not necessary to provide in this act that such taxes should be graduated. If the ordinance imposing the license tax does so in conformity to the Constitution, that is sufficient.

Next followed the act approved March 2, 1897 (*22* Stat., 464), which amended the charters of all cities and towns in this State by endowing them with all the powers enumerated in the said act of 1896; so that there can be no doubt as to the *statutory* authority to impose said license taxes. Objections are made against the constitutionality of the said act of 1897 on the ground (1) that the powers that it confers are inconsistent with and in some cases—as Abbeville, for instance—repugnant to the powers previously conferred by the charters already in existence; and (2) that it refers to more than one subject; and (3) that it does not specify in what particular it amends city and town charters; and (4) that it was repealed by the act of 1899, 23 Stat., 70; but the Circuit Judge has passed upon all these questions and has found adversely to appellants' contention, and this Court is satisfied with his rulings in regard thereto; and further, that the city of Abbeville had full power to pass the said ordinance.

It remains only to ascertain whether or not it exercised said power in a proper manner. The Constitution (sec. 6, art. VIII.,) only requires that the license or privilege tax shall be *just*. The requirements in said section that taxes must be *uniform in respect to persons and property*, does not apply to the license or privilege tax. As all callings, occupations and kinds of business differ more or less, the one from the other, the very power to impose a tax that will be just on each class, "involves the

right to make distinctions between different trades, and between essentially different methods of conducting the same general character of business or trade" (*In re Haskell,* L. R. A., vol. 32, p. 529), and what is a reasonable license fee, must depend largely upon the sound discretion of the city council (*In re Haskell, supra*). In a Texas case (*Albrecht* v. *State,* 34 Am. Rep., 737), it was held that "To tax a merchant upon his stocks as property, and also upon his gross sales, may seem burdensome, but it is not unconstitutional, when not expressly forbidden by the Constitution." Nor is a license tax imposed by a municipality upon merchants * * * graduated according to their monthly sales unconstitutional, as it applies equally to all in the same category (*City* v. *Crocker,* 16 Cal., 123). And an ordinance charging a license on vehicles, the uses to which they are put and the number of horses used, is not void, as it acts uniformly on all subjects in the same class (*Newton* v. *Atchison,* 31 Kan., 157). In *State* v. *Harrington,* 34 L. R. A., 100, it was held that "A license cannot be deemed unequal because it reaches one occupation only, if it reaches all who follow that occupation." These authorities are not judicially binding on this Court, but they show the views which Courts of last resort in other States have taken of the matter involved in this case, and in this way throw some light on the subject. An inspection of the ordinance in question fails to disclose any violation of either the statutory or the constitutional requirements. It is true, that appellants urge that the ordinance does not impose a tax uniform as to persons and property, and that the city of Abbeville did not have the right to classify its citizens and their occupations, so as to put them in as many classes as they chose; and that the license tax is not so graduated as to impose a just share of the burdens of taxation upon occupations and businesses affected thereby; and that the city council of Abbeville had no right to fix a different rule for taxing merchants than the rule fixed for taxing them under the State law; and that his Honor, the Circuit Judge, erred in treating the ordinance as

a police regulation, when it declares on its face that it is for revenue; and that the imprisonment provided for in the ordinance would be imprisonment for debt, and, therefore, unconstitutional; and that the classification of keepers of livery stables is erroneous; and as bakers are exempt, that the taxation is not just, as it does not reach *all* classes; but the Circuit Judge has found all these points adversely to the appellants' claim, and this Court agrees with his findings.

In answer to the twenty-third exception of appellants, as to omission of the Circuit Judge to rule upon the taxation of dogs, the tax fixed as alleged being $1 for the privilege of keeping a dog, and it being claimed that as dogs are property, they should have been taxed as any other property is taxed; it is sufficient to say that the act of 1896, No. 36, authorizes cities and towns to impose a license tax for corporative purposes, and to pass such ordinances as are necessary to enforce them, and to punish those who fail to comply with the law, and we see nothing wrong in the ordinance in this respect. And the same may be said as to the point raised, that there is a distinction between ordinances for police regulations and ordinances for revenue; both are authorized by our Constitution, and the acts referred to.

It is, therefore, ordered, that the decision of the Court below be affirmed.