9247

LILLARD v. MELTON ET AL.

(87 S. E. 421.)

CONSTITUTIONAL LAW. COUNTIES. BONDED INDEBTEDNESS. LIMITATIONS ON. PUBLIC OFFICERS. LICENSE TAXES. EQUALITY AND UNIFORMITY. ASSESSMENT AND LEVY.

1. CONSTITUTIONAL LAW — STATUTES. — When the general subject is expressed in the title of a statute, any details of legislation as to means, methods or instrumentalities to facilitate the accomplishment of the general purpose and germane to it, may be embraced in the body of the act without violating art. III, sec. 17, of the State Constitution.

2. PUBLIC OFFICERS—TERM.—A statute providing that a commission shall serve for a term of three years or until the provisions of the act are completely carried out, does not extend the term of office beyond the period of three years, but restricts it to the completion of the work, if completed within that specified period.
(MR. CHIEF JUSTICE GARY, MR. ASSOCIATE JUSTICE FRASER, and CIRCUIT JUDGES SHIPP and GARY, dissent.)

3. CONSTITUTIONAL LAW—EQUAL PROTECTION.—The direction in a statute that all laborers to be employed in construction of a public work contemplated, with specified exceptions, shall be residents· of the county, is not in contravention of State Constitution, art. I, sec. 5, nor of the fourteenth amendment to the Federal Constitution.

4. TAXATION—LICENSE TAX.—The legislature has inherent power in the absence of constitutional inhibition, to impose a license tax on all resident owners of vehicles, graduated according to horse power, using highways for the purpose of raising revenue.

5. TAXATION—EQUALITY AND UNIFORMITY.—The constitutional provisions for equality and uniformity in taxation (Const., art. X, secs. 1 and 5) do not forbid the imposition of a license tax on all resident owners of vehicles, using the highways, graduated and apportioned on the basis of horse power, which has a direct and natural· relation to the privilege granted, since the license tax .relates to all persons in a class, and operates uniformly on all therein.
(MR. CHIEF JUSTICE GARY, dissents.)

6. TAXATION—LICENSES.—The State may, tax the residents of a municipality for the maintenance of roads and streets, without imposing such tax upon nonresidents who use such highways temporarily.

7. TAXATION—ASSESSMENT AND LEVY.—The requirement in the act of February 20, 1915, sec. 11, 29 Stats. 497, that the county auditor shall assess and levy a license fee or tax, on all resident owners of certain vehicles, is a direct imposition and levy of the tax by the legislature.

8. MUNICIPAL CORPORATIONS—LIMITATIONS ON INDEBTEDNESS.—Under the amendments to the Constitution (23 Stats. 616; 27 Stats. 13) bonds issued solely for the purchase, establishment and maintenance of waterworks and other stated public utilities, are to be excluded in ascertaining whether the limitations on bonded indebtedness in Const., art. VIII, sec. 7; art. X, sec. 5, have been reached

9. MUNICIPAL CORPORATIONS—CONTINGENT LIABILITIES.—A mere contingent liability of a municipal corporation must be excluded in ascertaining whether the limitations on bonded indebtedness in Const., art. VIII, sec. 7; art. X, sec. 5, have been reached.

10. MUNICIPAL CORPORATIONS — BONDED INDEBTEDNESS. — The bonded indebtedness of a city or town limited to eight per cent. by Const., art. VIII, sec. 7; art. X, sec. 5, includes only municipal obligations created after a submission of the question to the voters, and excludes obligations not so created and represented merely by outstanding notes, not issued in compliance with the constitutional requirement.

11. MUNICIPAL CORPORATIONS—COUNTIES—STATUTES.—Act of February 20, 1915, 29 Stats. 493, does not delegate the taxing power, but is mandatory as to the issuance of bonds by the commission therein created, and vests the commission with discretion only as to the denomination, times and amount of issues not to exceed the prescribed maximum.
(MR. CHIEF JUSTICE GARY, MR. JUSTICE FRASER, and CIRCUIT JUDGES SHIPP and GARY, dissent.)

12. COUNTIES — BONDED INDEBTEDNESS—SUBMISSION TO VOTERS.—Act of February 20, 1915, 29 Stats. 493, creating a bonded indebtedness on a county without submission of question to voters, held, valid, as no constitutional provision required such submission.
(MR. CHIEF JUSTICE GARY, dissenting, is of opinion, that a submission of the question as to an increase of bonded indebtedness was a prerequisite to its increase to the extent of 15 per cent. of the taxable property within the territory.)

13. COUNTIES—OFFICERS.—A commission created as the agents of the legislature to issue, and sell county bonds, and use the proceeds for improvement of highways in a county, are the corporate authorities for such purposes.
(MR. CHIEF JUSTICE GARY, dissenting, is of opinion, that the commission was charged only with special duty pertaining to a particular transaction.)

14. COUNTIES—LOCAL GOVERNMENT.—A county is a mere department of the State has no right to local self-government which is beyond legislative control.

Before WILSON, J., Columbia, April, 1915.   Affirmed.

Action by John W. Lillard, a resident citizen, freeholder and taxpayer of the city of Columbia, county of Richland and State of South Carolina, on behalf of himself and all others likewise interested and situated, against W. D. Melton, chairman; A. B. Langley, H. H. Hinnant, J. T. Reese and Andrew Patterson, Jr., as "Richland County Commission for Permanent Highways." From an order refusing an injunction, and dismissing the complaint, the plaintiff appeals. The facts are stated in the opinion of the Court *en banc.*

*Mr. H. N. Edmunds,* for appellant, submits: *The outstanding liabilities on certificates for paving assessments should be included in calculating the bonded indebtedness:* 60 S. C. 532.   *Tax levied on vehicles unequal:* 51 S. C. 51; 56 S. E. 523; 54 S. C. 564; 53 S. C. 259.   *Title of act:* Const., art. III, sec. 17; 80 S. C. 127.   *Legislature itself levies tax:* 62 S. C. 28.   *Submission to voters:* 83 S. C. 88; 62 S. C. 28.   *Discriminates against nonresident laborers:* 118 U. S. 356.   *Bond debt cannot be increased by other than the corporate authorities of the county, or without submission to voters:* 23 Mich. 499; 54 Mich. 477; 29 N. W. 549; 22 A. & E. Ann. Cas. (1912a) 1063; 24 Mich. 44; 9 Am. Rep. 103; 28 Mich. 228; 15 Am. Rep. 202; 51 Ill. 17; 57 L. R. A. 244 and 755; Cooley Const. Lim. (7th ed) 325.

*Messrs. Shand, Benet, Shand & McGowan,* for respondents, cite: *What is not bonded indebtedness:* 73 S. C. 89; 60

FOOTNOTE.—As to validity of exercise or license tax on automobiles, see notes in 1 L. R. A. (N. S.) 215, 37 L. R. A. (N. S.) 440, 441, 52 L. R. A. (N. S.) 949 to 959, 56 L. R. A. (N. S.) 1915d, 322, 25 A. & E. Ann. Cas. 1912d, 259.

S. C. 533; 5 S. C. 156.   *Title of act:* 83 S. C. 488; 30 S. C.
1; 74 S. C. 488; 76 S. C. 331; 91 S. C. 454; 97 S. C. 212.
*Delegates mere administrative details to commission:* 96 S.
C. 271.   *Validity of license tax on vehicles:* 36 L. R. A. 413,
and note; 37 L. R. A. (N. S.) 440, and note; 74 Atl. 538.
*Not discriminatory:* 67 S. C. 44; 63 S. C. 425; 113 U. S. 27;
*Ib.* 703; 76 S. C. 28; 37 Sup. Ct. Rep. 140. *Legislature levies
the tax:* 62 S. C. 34.   *Commissions:* 16 Stats. 319; 14
Stats. 444; 25 Stats. 835; 9 S. C. 441, 453; 42 S. C. 231.
*Residence of employees:* 80 S. C. 506.   *Submission to
voters:* 83 S. C. 88.   *Special legislation:* 66 S. C. 372; 89
S. C. 372.   *Enrolled act:* 39 S. C. 309; 2 S. C. 150; 13 S
C. 46, 316.

December 17, 1915.

The opinion of the Court, *en banc,* was delivered by MR.
CIRCUIT JUDGE SMITH.

This is an action to enjoin the defendants from issuing
bonds under an act, entitled "An act to authorize and pro-
vide for the issue of bonds by Richland county for perma-
nent highway improvement, and to provide for the expen-
diture of the same, and for vehicle licenses and a property
tax to pay the same, the total issue not to exceed one and
one-quarter million dollars."   29 Stat. 493.

The constitutionality of the act is assailed upon numerous
grounds, some of which have been so fully considered in
previous decisions of the Court, in passing upon the con-
stitutionality of other statutes, as to preclude the necessity
of an extended consideration of them in this opinion.

It is urged that the provision of the act which penalizes
the failure to report a vehicle subject to payment of the
license tax imposed is obnoxious to the requirement of the
Constitution that every act shall relate to but one
subject which shall be expressed in its title.   In many
cases, it has been held, in view of the purpose of this
provision of the Constitution, that it should have a liberal

construction, so as not to defeat or embarrass legislation by compelling separate enactments on every phase of a general subject of legislation or with regard to every matter incident thereto or promotive thereof. When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the Constitution. *State* v. *O'Day,* 74 S. C. 449, 54 S. E. 607; *Aycock-Little Co.* v. *Ry.,* 76 S. C. 331, 57 S. E. 27; *Johnson* v. *Commissioners,* 97 S. C. 212, 81 S. E. 502.

The act provides that "the commission shall serve for a term of three years, or until the provisions of this act are completely carried out." It is contended that this violates the provision of the Constitution (art. I, sec. 11), which declares that "the terms of all officers shall be for some specified period," etc. The term is for a specified period of three years. The words "or until," etc., are not to be construed as extending the term beyond that period without reappointment, but merely as restricting it to the completion of the work, if completed within that time. If an extension of the term beyond three years had been intended, the word "and" would have been used instead of "or." But, we must not be understood as holding that, even if an extension of the term beyond three years had been intended, it would violate the Constitution in this particular. In *State* v. *Bowden,* 92 S. C. 400, 75 S. E. 866, the Court *en banc* said: "It would be most unreasonable to impute to the constitutional convention a purpose to give to the expression 'some specified period' a meaning so narrow as to prohibit any legislative provision against the inconvenience arising from vacancies in public office, which would occur if the encumbent could not be allowed to hold until the appointment or election and qualification of his successor." Besides, in the event suggested, the question would arise, whether

appointment for a period of time necessary to complete a specified work is not for a "specified period," within the meaning of the Constitution; and, also, if it were not, whether the extension would nullify the whole act, or only the appointment for the illegal excess. 29 Cyc. 1396. But the construction given renders the consideration of these questions unnecessary.

It is provided in section 5 of the act that all laborers to be employed in the construction of the work contemplated therein, with an exception in favor of officers, superintendents and skilled mechanics who cannot be obtained in the county, shall be actual residents of the county.

It is contended that this provision is in contravention of section 5, article I of the State Constitution and the fourteenth amendment to the Federal Constitution. The objection is clearly untenable. There is an absence of any penalty to enforce this provision, thereby indicating a legislative intent to make the same purely suggestive or directory. Conceding, however, that the provision was mandatory, the objection could not be sustained, as no citizen of one county has the legal right to demand that he shall be employed upon the public works of another, and, certainly, the legislature, in directing the use or disposition of the public property or funds of the State or county, raised by taxation upon the people of either, has the power to limit the benefits to be derived therefrom to the residents of either. Such is plainly the conclusion reached by the U. S. Supreme Court in the case of *Truax* v. *Raich,* 239 U. S. 33, 36 Sup. Ct. Rep. 7, which is cited by the appellant.

The next question involves the validity of the provision for a license fee on all resident owners of vehicles, which is graduated according to horse power. It is urged that this is in violation of the equality and uniformity clause of the Constitution.

It is generally held that such provisions are applicable only to a property tax. Cool. Con. Lim. 713, 21 A. & E.

Ency. Law (2d ed.) 802, 803. It is also evident that the license fee referred to is not in any sense a property tax, although such a tax is .provided in the act to meet a deficiency in, or failure of, the license fee. The contention can not be sustained that the license fee is designated a property tax in the title, since both kinds of taxes are mentioned in the title, and, in conformity therewith, both are provided for in the body of the act.

The vehicle licenses imposed is obviously a tax upon the right to *use* the improved highways of the county for the purpose of raising revenue to pay the interest on the bonds and provide a sinking fund for the redemption thereof. at maturity. No provision in the Constitution can be found prohibiting the legislature from imposing such a license. That it has the inherent power, in the absence of constitutional inhibition, to impose such a tax directly, or to authorize its imposition by a municipal corporation, either for the purpose of raising revenue, or as a police regulation, is conclusively established by the authorities. *Hill* v. *Abbeville,* 59 S. C. 426, 38 S. E. 11; Cooley's Con. Lim. 712, 713; 3 Dill. Mun. Corp. 1164; 4 *Id.* 1407; *Fort Smith* v. *Scruggs,* 70 Ark. 541, 69 S. W. 438; *Harder's Storage Co.* v. *Chicago,* 235 Ill. 70, 85 N. E. 245, 14 A. & E. Ann. Cas. 536.

In his work on Taxation, at p. 5, Judge Cooley thus states his conclusion: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature, in its discretion, shall at any time select it for revenue purposes." The right to levy such a tax is also strongly stated in the case of *Harder's Storage Company* v. *Chicago, supra,* at p. 87, 85 N. E. 245, 14 A. & E. Ann. Cas. 536, as follows: "The law is well settled that the owner of vehicles used upon the

public streets and highways may be required to pay an *ad valorem* tax upon such vehicles as property, and also may be required to pay a tax upon the right or privilege, of using such vehicles in his business—that is, an occupation tax. The subject of the *ad valorem* taxation is property. The subject of the other taxation is a right or privilege—an entirely distinct and different thing. * * * The question which is now to be considered is whether or not, in addition to the *ad valorem* tax on vehicles, as property, and a license tax on the right to pursue an occupation in which vehicles may be used, there may be imposed also a license tax upon the *right or privilege of using vehicles upon the public streets and highways.* * * * The taxes which complainant in the case at bar must pay are levied upon three separate and distinct subjects: (1) An *ad valorem* tax on its vehicles, as property; (2) an occupation tax or license on the privilege of carrying on business as a carter or public teamster; and (3) a license tax on the privilege of using its vehicles on the public streets. Taxation upon each of these three different subjects is not double or triple taxation simply because one person may have to pay two or all of the three taxes, since it is not the person who is taxed, but his property and his privileges. One person may avail himself of a half dozen or more different privileges, for each of which he may be required to pay a tax or license fee."

Having determined the nature of the license fee imposed, it remains to be ascertained if the method of apportionment prescribed in the act is violative of the clauses of the Constitution referred to. The apportionment on a basis of horse power has a direct and natural relation to the privilege granted—the use of the highway, and since the license relates to all persons in a class, and operates uniformly upon all therein, there is no unlawful discrimination. *Hill* v. *Abbeville, supra; Cowart* v. *City Council,* 67 S. C. 35, 45 S. E. 122; Cooley's Con. Lim. 713.

The objection that there is an unjust discrimination in the provision which imposes upon resident vehicles a license while those of other counties and States may temporarily use the highways without incurring liability for the payment thereof, is wholly without merit. The right to tax the residents of a municipality for the maintenance of roads and streets, without the imposition of such a tax upon nonresidents who use such highways temporarily, has never been questioned or denied in any jurisdiction of which we are aware. On the contrary, the right to impose such a license or tax is generally recognized. 3 Dillon Mun. Corp. 1166; *Tomlinson* v. *Indianapolis,* 144 Ind. 145, 43 N. E. 9, 36 L. R. A. 413n.

The act is also assailed on the ground that the authority to levy the vehicle licenses and taxes therein provided has been delegated to the county auditor, while this power can only be exercised by the legislature under section 5, article X of the Constitution. It is clear that the legislature did not attempt a delegation of power, as the most casual observation of the enactment will disclose. It makes a direct imposition which is a fully authorized exercise of legislative power under the cases of *Southern Railway* v. *Kay,* 62 S. C. 28, 39 S. E. 785, and *Dickson* v. *Burckmyer,* 67 S. C. 526, 46 S. E. 343.

The next question presented is whether the present bonded indebtedness of the city of Columbia, including its proportionate part of the bonded indebtedness of certain other political divisions extending over the same territory, when added to its share of the issue directed in the act exceeds the fifteen per cent. limitation fixed by section 5, article X of the Constitution, as the maximum amount of bonded indebtedness which can be placed on any political subdivision in the State.

It is conceded that the taxable property of Richland county is $22,731,712, and that two-thirds of this is within the corporate limits of the city of Columbia, namely, $15,081,-

534. Fifteen per cent. of this amount is $2,262,230.10, which amount the bonded debt of the city cannot exceed. It is likewise conceded that the sum of $1,195,800 is properly chargeable against the city in an estimate of its bonded debt, leaving a margin of $1,066,430.10. The sole question is whether certain other items of indebtedness are a part of its bonded debt, to wit, new waterworks bonds aggregating $390,000; old waterworks bonds (20 Stat. 967), in the sum of $75,000; outstanding guaranteed interest on Columbia Canal bonds (19 Stat. 1090, 1097), amounting to $42,000; a contingent liability on certain paving assessments sold and guaranteed under legislative enactment (28 Stat. 585), for $90,000, and certain outstanding notes amounting to $263,-064.64.

It will not be questioned that the purpose of the water-works bonds, old and new, is within the contemplation of those amendments to the Constitution (23 Stat. 616, and 27 Stat. 13), which provide that the limitation in section 7, article VIII, and section 5, article X of the Constitution, shall not apply to an issue where the proceeds are applied solely for the purchase, establishment and maintenance of waterworks plants and other stated public utilities. Under these amendments and the case of *Seegers* v. *Gibbes,* 72 S. C. 532, 52 S. E. 586, and *Bethea* v. *Dillon,* 91 S. C. 413, 74 S. E. 983, these bonds must be excluded in a calculation of the bonded debt of the municipality, so far as this limitation is concerned. Likewise, the liability of the city on the guarantee of the paving assessments and the interest on the canal bonds constitute but a contingent obligation and must be excluded.

In determining whether the notes in question should be regarded as a part of the bonded debt of the city, it will be necessary to ascertain if such obligations are properly comprehended within the meaning of these words in a constitutional sense. Evidently, the limitation was not intended to embrace every form of liability, for

it is obvious that if this had been the purpose, the word "bonded" would not have been used to describe the character of the debts, which are subject to the limitation.   It is quite significant that in dealing with the subject of an increase of the public debt of the State (section 11, article X), the Constitution forbids the creation of "any further debt or obligation, either by the loan of the credit of the State, by guaranty, indorsement or otherwise," while in the provisions relating to the debt of certain municipalities the words "bonded debt" are used.   It follows, naturally, that in the use of the words "bonded debt" and "bonded indebtedness," in the sections prescribing the eight and fifteen per cent. limitations, the framers had in mind the same kind of obligation that these words are used to designate in section 7, article VIII. . So, whatever may be the nature of the debt included within the words "bonded debt," in the latter section, as applicable to the limitation, this section expressly provides that "no *such debt*" shall be created without a submission of the question to the vote of the electors.   Therefore, only such obligations as are thus created are properly referable to the "bonded debt" of a city or town.   Any other construction would strike out of these sections the qualifying word "bonded," and its ordinary and natural meaning, in which it must be presumed that it was used.

But it is contended that the case of *Duncan* v. *Charleston,* 60 S. C. 532, 39 S. E. 265, is conclusive of the view that such notes must be reckoned as a part of the city's bonded indebtedness.   Upon examination, it will be found that such was not the decision of this Court in that case.   It is quite true that the lamented Mr. Chief Justice Pope, who delivered the opinion, declared that an obligation of the city of Charleston, under its corporate seal, was a part of its bonded indebtedness, but he rested the invalidity of the contract upon other grounds also, and the other Justices only concurred in the result.   It follows, then, that the only effect of the decision was to sustain the illegality of the contract.

In the subsequent case of *Luther* v. *Wheeler,* 73 S. C. 89, 52 S. E. 874, 6 A. & E. Ann. Cas. 754, 4 L. R. A. (N. S.) 746n, the question was not involved, but suggested by Mr. Justice Woods, who delivered the opinion, and the intimation was entirely against the soundness of such a view. The question, therefore, has not been heretofore determined by the Court. There is no pretense that these notes were issued in compliance with the constitutional requirement, essential to the validity of a "bonded debt," and they must be excluded therefrom.

The language of section 1 of the act is mandatory as to the issuance of the bonds by the commission therein created for permanent highway improvement. The only discretion vested in the commission is as to the denomination, times and amounts of the issue not to exceed a maximum amount. It is contended that the legislature has no such power under the Constitution as it has attempted to exercise in this enactment without a submission of the question of issuance to the qualified electors of the county in the manner provided for such elections.

Section 6, article X of the Constitution, provides that the General Assembly shall not have power to authorize any county or township to "levy a tax or issue bonds" for any purpose *except* for certain purposes therein specified, among which is "to build and repair public roads, buildings and bridges." Certainly, under this provision, it is within the power of the legislature to authorize a county "to levy a tax or issue bonds" to "build and repair public roads." Unless this conclusion necessarily follows, the position must be taken that a provision prohibiting the doing of an act *except* for a certain purpose does not imply the right to do it for *that* purpose, which is contrary to all reason. In the case of *Southern Railway* v. *Kay, supra,* the Court held that it was within the power of the legislature to make a direct levy of a tax "for road purposes" in one of the counties.

If this be true, it should not be open to serious controversy that under this section of the Constitution it would have the same right to make a direct bond issue for this purpose. It will be observed that the two powers, namely, to "levy a tax" and "issue bonds" are coupled together in this section. No distinction is recognized and both are applicable to the purposes therein stated. Whatever purpose therein mentioned can be made the subject of a tax levy can also be made the subject of a bond issue; whatever power is given, or limitation imposed, on the one clearly exists with regard to the other.

Considerable stress is laid upon the case of *State* v. *Neely,* 30 S. C. 587, 9 S. E. 664, 3 L. R. A. 672, as an authority denying such legislative power. A careful examination of that case will show, however, that it rather sustains the right. Mr. Chief Justice McIver, delivering the opinion of the Court, in a reference to the case of *State* v. *Whitesides,* 30 S. C. 579, 9 S. E. 661; 3 L. R. A. 777n, does say that the latter case was not to be regarded as an authority for the imposition of a tax directly by the legislature without the consent of the people of the particular locality to be affected thereby. In the *Neely* case, however, it must be observed that the action sought to compel the application of certain funds to the payment of a coupon on a bond issue in aid of a *railroad.* It was, no doubt, in recognition of this fact, and an important distinction based thereon, that the learned Chief Justice, immediately after the observation above referred to, was careful to declare: *"Except for governmental purposes proper,* we do not think that the legislature has the power to impose a tax upon the people of any particular locality or territorial subdivision of the State without their consent," p. 604. (Italics added.) Certainly, it will not for an instant be argued that the issuing of bonds for "permanent highway improvement," the object of the act, is not for a "governmental purpose."

It is, therefore, clear that this objection cannot be sustained, unless some provision of the Constitution is invoked which either directly, or by necessary implication, denies such legislative power.   An examination of the instrument as a whole will disclose that only in twelve instances did its framers expressly provide for a referendum to the qualified electors.   In their consideration of the subject of finance and taxation, the limitations and safeguards which their wisdom deemed necessary to be embodied in the organic law of the State, they denied the power to increase the public debt of the State (section 11, article X), and of a city or town, to incur any bonded debt, except upon a submission of the question to the qualified electors.   Yet no such restriction can be found in the instrument with regard to an issue of bonds by a county.   Is not this omission significant? Assuming, for the sake of argument, that this omission was merely an instance of *casus omissus,* it is certainly not within the power of the Court to supply the deficiency.   *State* v. *Hagood,* 13 S. C. 46; *Bray* v. *City Council,* 62 S. C. 57, 39 S. E. 810; *State* v. *Jones,* 99 S. C. 218, 82 S. E. 1048.   It is likewise settled beyond controversy that under the distribution of power that obtains in our governmental system, the Court is not to be concerned with the political policy of the legislative department so long as it does not assume the form of enactments affecting the rights of person and property in a manner repugnant to the fundamental law.   Neither is the Court at liberty in the determination of the question to be controlled by any unexpressed spirit or public policy supposed to underlie and pervade the instrument.   It is generally recognized that the public policy of a State must be ascertained from its Constitution and statutes, and only in the absence of declarations in these can such policy be determined by judicial decisions.   Cooley's Con. Lim. 239, 240; 6 A. & E. Ency. Law 293; *Sharpless* v. *Mayor* (Pa.), 59 Am. Dec. 759.

It is urged, however, that if the legislature is left wholly unrestricted in its power to impose such debts upon the counties, it would be easy to evade the prohibition against the increase of the public debt of the State, except upon submission to the qualified electors, by placing such debts upon the counties as units of the State. An answer to the objection is found in the limitation (section 5, article X), which prohibits the total bonded debt over any part of the territory of the State from exceeding fifteen per cent. of the total taxable property therein.

The consideration of this question, however, need not be further prolonged, as it was squarely before the Court, and determined adversely to the contention of appellant in the case of *Carrison* v. *Kershaw County,* 83 S. C. 88, 64 S. E. 1018. In disposing of the question the Court, at page 20, says: "While article X, section 11 of the Constitution, forbids an increase of the public debt of the State, without submitting the question to the qualified electors, and while article VIII, section 7, forbids any city or town from creating a bonded debt, without submitting the question to the qualified electors of the city or town, we find no such restriction on the *power of the legislature,* with respect to the issuance of bonds by a county. *In the absence of such restriction the power of the legislature in the matter is plenary.*" (Italics added.) Thus, in forceful language, the Court, speaking through Mr. Chief Justice Jones, reaches a conclusion which unquestionably embodies the constitutional intent, a disregard of which would be utterly subversive of those plain and reasonable rules which must be recognized as a proper guide in judicial construction. This case and the one at bar are entirely irreconcilable in reason and principle, if the objection urged should be sustained. To attempt such a reconciliation upon the grounds urged would force the adoption of a distinction whose application to the determination of grave constitutional questions would be extremely unfortunate. For, it would be necessary to hold that a power,

which is clearly discretionary, vested in the legislature by the Constitution to authorize a county to levy a tax or issue a bond, must be a denial of the power in the legislature to do so directly, which is contrary to the conclusion announced in *Southern Railway* v. *Kay, supra,* and *Dickson* v. *Burckmyer, supra.*

Since the decision in the case of *Carrison* v. *Kershaw County, supra,* the legislature, evidently viewing the solemn adjudication of this Court as a determination of its powers in such cases, has enacted a great many measures providing for bond issues without the prerequisite of a submission of the question to a vote of the electors. A contrary conclusion at this time would, indeed, be unfortunate in its effect upon the valuable rights which have been acquired in good faith and in reliance upon that decision. Cooley's Cons. Lim., pp. 81, 82. When a principle is once adopted and declared by the Courts, the people have a right to regard it as just declaration of the law and to regulate their actions and contracts thereby. *Id.,* pp. 83, 84. There should never be a disturbance of the same, except upon urgent reasons and a clear manifestation of error. *Id.* 84.

It is further contended that the act is repugnant to the Constitution in that the authority to issue said bonds should have been vested in the corporate authorities of the county. An examination of article VII of the Constitution, relating to counties and county government, will not show a single provision with regard to the creation of a constitutional office, or any attempt whatever to define or create a corporate authority, or to establish a uniform or definite form of county government. In this particular the present Constitution differs materially from that of 1868 (section 19, article IV). It, therefore, follows that it is entirely within the legislative power to create or change such offices and the duties of such officers at will. 4 Dillon Munic. Corp. 1372; Mechem on Pub. Officers, 465; Throop on Pub. Officers, 19, 20; *Fooshe* v. *McDonald,* 82 S. C. 22,

63 S. E. 3. As a result, an examination of the statutes with regard to county government and the corporate authorities thereof, their powers and duties, will disclose that widely different policies are adopted in the different counties. If the issuing of bonds for the permanent improvement of public highways, a provision for the payment of the interest thereon, their redemption and a method of expenditure are within the corporate purposes of a county, and there can be no question about this, then that person, board or commissioner, whatever may be the form, is the corporate authority under the Constitution that is empowered by the legislative will to act in the premises. One act of the General Assembly is no more potent than another. The commission created under this act derives its authority from the same source as the board of county commissioners, and if the General Assembly could have *abolished* the board in this act, which was done in the case of *Fooshe* v. *McDonald, supra,* and transferred every duty and power to the commission, certainly it would have the authority in the absence of any constitutional inhibition to vest it with the powers given. The commissioners are merely the agents of the legislature for the purposes of the act.

It is contended that the corporate authorities are vested with power and control over the public highways of the county as a local affair under the definite policy of the State, and in devolving such powers upon a commission charged with the mandatory duty of issuing said bonds, the act denies the right of local self-government. As we have already shown that the commission constitutes the corporate authorities of the county for the purposes of the act, it is only necessary to inquire whether the failure to vest in them a discretionary power is violative of the principle.

In 1 Dill. Munic. Corp., section 98, the author, discussing this question, says: "It must now be conceded that the great weight of authority denies *in toto* the existence, in the

absence of special constitutional provisions, of *any inherent right of local self-government which is beyond legislative control.* The Supreme Court of the United States has declared that a "municipal corporation, in the exercise of all its duties, including those most strictly local or internal, is but a department of the State. The legislature may give it all the powers such a being is capable of receiving, making it a miniature State within its locality; or it may strip it of every power, leaving it a corporation in name only; and it may create and recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all the powers usually committed to a municipality * * * The people are the recognized source of all authority, State and municipal; and to this authority it must come at last."

In the case of *Laramie* v. *Albany Co.,* 92 U. S. 312, the Court says: "Such corporations are the mere creatures of the legislative will; and, inasmuch as all their powers are derived from that source, it follows that those powers may be enlarged, modified, or diminished at any time, without their consent, or even without notice. They are but subdivisions of the State, deriving even their existence from the legislature. Their officers are nothing more than local agents of the State; and their powers may be revoked or enlarged, and their acts may be set aside or confirmed at the pleasure of the paramount authority, so long as private rights are not thereby violated." It is, therefore, evident that the act is not subject to this objection.

All other questions raised by the exceptions to which no special reference has been made, have been duly considered and overruled.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES HYDRICK and GAGE, and CIRCUIT JUDGES PRINCE, DEVORE, SEASE, BOWMAN, MOORE and RICE concur in the opinion delivered by JUDGE SMITH.

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action to enjoin proceedings under an act entitled "An act to authorize and provide for the issue of bonds by Richland county for permanent highway improvement, and to provide for the expenditure of the same and for vehicle licenses and a property tax to pay the same, the total issue not to exceed one and one-quarter million dollars."

Section 1 of this act is as follows:

"The county of Richland shall issue coupon bonds for permanent highway improvement in the said county, the bonds to be of such denominations, and to be issued at such time or times, and to such an amount, or to such amounts, as the commission hereinafter provided for, may determine in its judgment and discretion, such issue not to exceed one and one-quarter million dollars, and to draw interest at a rate not exceeding five per centum per annum, payable annually."

Section 2 contains these provisions:

"The persons hereinafter named shall constitute a board of commissioners to be known as the 'Richland county commission for permanent highways,' and shall have charge of the carrying out of the provisions of this act. * * * The commission shall serve for a term of three years, or until the provisions of this act are completely carried out."

Section 13 provides that the commission shall have a supervisory control over the auditor and treasurer of Richland county.

Section 14 provides that the supervisor of Richland county shall be a member of the commission.

The act does not purport to repeal the law which provides for an auditor, a treasurer and a supervisor for Richland county, but, on the contrary, recognizes that the auditor, treasurer and supervisor still remained in office after the passage of said act.

His Honor, the Circuit Judge, refused the injunction and the petitioner appealed.

When the Constitution was adopted, the framers provided a scheme for the bonded indebtedness of the State, also for municipalities and likewise for the other political divisions and subdivisions of the State.

Section 11 of article X relates to the bonded indebtedness of the State, and is as follows:

"To the end that the public debt of South Carolina may not hereafter be increased, without the due consideration and free consent of the people of the State, the General Assembly is hereby forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State, without first submitting the question as to the creation of such new debt, guaranty, endorsement or loan of its credit to the qualified electors of this State, at a general State election; and unless two-thirds of the qualified electors of this State, voting on the question, shall be in favor of increasing the debt, guaranty, endorsement or loan of its credit, none shall be created or made." * * *

The following sections relate to the bonded indebtedness of municipalities:

Section 3, article VIII, is as follows:

"The General Assembly shall restrict the powers of cities and towns to levy taxes and assessments, to borrow money and to contract debts." * * *

Section 7, article VIII, is as follows:

"No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein, and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town, as provided in this Constitution for such special elections; and unless a majority of such electors voting on the question shall be in

favor of creating such further bonded debt, none shall be created." * * *

Section 13, article XI, is as follows:

"In authorizing a special election in any incorporated city or town in this State, for the purpose of bonding the same, the General Assembly shall prescribe as a condition precedent to the holding of said election, a petition from a majority of the freeholders of said city or town, as shown by its tax books, and at such elections all electors of such city or town, who are duly qualified for voting under section 12 of this article, and who have paid all taxes, State, county and municipal, for the previous year, shall be allowed to vote; and the vote of a majority of those voting in said election shall be necessary to authorize the issue of said bonds."

Section 6 of article X relates to counties and townships, and is as follows:

"The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds, for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers, and for litigation, quarantine and Court expenses, and for ordinary county purposes, to support paupers, and pay past indebtedness."

The following sections relate both to municipalities and other political divisions and subdivisions of the State:

Section 5 of article X is as follows:

"The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. * * * The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State, shall never exceed eight per centum of the assessed value of all the taxable property therein. And no county, township, municipal corporation or other political division of

this State shall hereafter be authorized to increase its bonded indebtedness, if at the time of any proposed increase thereof, the aggregate amount of its already existing bonded debt amounts to eight per centum of the value of all taxable property therein, as valued for State taxation. And wherever there shall be several political divisions or municipal corporations, covering or extending over the territory, or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt, under the foregoing eight per cent. limitation, that the aggregate debt over and upon any territory of this State, shall never exceed fifteen per centum of the value of all taxable property in such territory, for taxation by the State."

Section 13 of article X is as follows:

"The General Assembly shall provide for the assessment of all property for taxation; and State, county, township, school, municipal and all other taxes shall be levied on the same assessment, which shall be that made for State taxes; and the taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities thereof."

We have reproduced these different provisions, because when they are considered together, they show clearly how careful the framers of the Constitution were to throw safeguards around bonded indebtedness, whether it was of the State, municipalities or political divisions or subdivisions of the State.

The rule laid down in Cooley's Constitutional Limitations, 71, 74, with reference to the construction of constitutions, is as follows:

"Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law. It is, therefore, a very proper rule of construction that *the whole is to be examined with a view to arriving at the true intention of each part.* * * *

The rule applicable here is, that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the Courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. * * *

"In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning. As Marshall, Ch. J., says: The framers of the Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said. This is but saying that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism, that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement, to induce the Courts to force from these instruments a meaning which their framers never held, that it frequently becomes necessary to redeclare this fundamental maxim. Narrow and technical reasoning is misplaced, when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every man, learned and unlearned, may be able to trace the leading principles of government."

It is also announced in *Delk* v. *Zorn*, 48 S. C. 149, 26 S. E. 466, that "a Constitution should be construed as a whole, and, if possible, effect should be given to all its provisions * * * and where two sections are inconsistent, effect will ordinarily be given to that section which is in harmony with other provisions, rather than to that which is inconsistent with more than one provision of the Constitution."

To the same effect is the rule stated in *Smith* v. *McConnell*, 44 S. C. 491, 22 S. E. 721, and *Seegers* v. *Gibbes*, 72 S. C. 532, 52 S. E. 586.

The first proposition we announce is that the bonded indebtedness was not created by the General Assembly itself, but was left to the discretion of the commission.

We do not understand that this is contested, but if so, it is settled by the case of *Ry.* v. *Kay,* 62 S. C. 28, 39 S. E. 785.

Our next proposition is that the creation of the bonded indebtedness was a legislative act that could not be delegated to the commission.

The rule is thus stated in *Port Royal Mining Co.* v. *Hagood,* 30 S. C. 519, 9 S. E. 686, 3 L. R. A. 841 (and affirmed in *Jones* v. *Ry.,* 76 S. C. 67, 56 S. E. 666) : "That the law itself should be full and complete, as it comes from the proper lawmaking body, it may be, indeed, must be, left to agents in one form or another to perform acts of executive administration, which are in no sense legislative. Without encumbering this opinion with the authorities we think the view is well stated in *Lock's Appeal,* 72 Pa. St. 491: 'Then the true distinction, I conceive, is this : the legislature cannot delegate its powers to make a law, but it can make a law to delegate a power, to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' "

In the case of *Ry.* v. *Kay,* 62 S. C. 28, 39 S. E. 785, the Court quotes with approval the following language from *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C. 430:

"The duty enjoined on the legislature is to 'levy a tax.' A tax is the means by which a burden primarily borne by the State is transferred to the citizen. * * * Three things are essential to a tax, as that term is understood by our Constitution. First, the ascertainment of a sum certain, or that can be rendered certain, to be imposed on the collective body

of taxpayers; second, a legal imposition of that sum as an obligation on the collective body of taxpayers; third, an apportionment of such sum among individual taxpayers, so as to ascertain the part or share that each should bear. * * * The first two acts above described, namely, the ascertainment of a sum to be imposed on the collective body of taxpayers, and its imposition by a legislative declaration to that effect, are essentially legislative acts or acts proper directly to the lawmaking function of the government. * * * The third act, namely, the apportionment of the whole sum imposed by way of tax on the collective body of taxpayers, upon the separate individuals composing that body, is usually an administrative act performed under specific statutory directions ascertaining the mode and time of its performance. * * * When the aggregate value of property is ascertained at the time the tax levy is ordered, the legislature frequently makes the division, and directs the levy to be made according to the resulting rate, which is thus established by law, instead of merely fixing the amount to be levied, and leaving the rate to be ascertained by computation, after the aggregate valuation of property subject to taxation is ascertained and known. Both modes are resorted to, and both are equally appropriate to adoption by the legislative body. As there are two distinct stages in this process, the result of one of which is to fix an indebtedness on the collective body of taxpayers and the other on the individual taxpayer, so the word 'levy' is indifferently employed, as commonly used, to express either one of these processes separately, or both collectively. A tax is said to be levied, when the amount of rate to be imposed is fixed by law; for what is wanting to complete such levy is supplied by the standing tax laws, and consists in a course of administrative action. When the levying of a tax is spoken of as a legislative act, it is commonly understood to describe such action on the part of the legislature as would, with standing tax laws, complete the legislative authority requisite to

enable the administrative department to distribute and collect the tax. * * * In other words, the tax directed to be levied must be so far imposed, in order to comply with the letter and spirit of the Constitution, that no further legislation will be necessary to enable its collection."

These authorities clearly show that fixing the amount of bonded indebtedness for a county is a *legislative* act which cannot be delegated.

Our next proposition is that the act is unconstitutional in that it provides that the commission shall serve for a term of three years, *or until the provisions of this act are carried out.*

Section 11, article 1 of the Constitution, provides that the terms of all officers shall be for some specified period. In ruling upon this question, his Honor, the Circuit Judge, said: "It is manifest that the term of office of the commissioners is three years, unless the duties with which they are charged have been fully performed in a less time."

The term of office mentioned in the act is in the alternative, and, therefore, it cannot be successfully contended that it is for a specified period.

It makes no difference whether the term of office was to expire before or after the work was completely carried out. It is the *uncertainty* that violates the Constitution.

The magnitude of the work, however, shows that the General Assembly contemplated that it would take more than three years to complete it.

The next question for consideration is, whether there was error on the part of his Honor, the Circuit Judge, in ruling that the act created an excise tax or toll chargeable for the purpose of keeping up the roads, used by the owners of vehicles, and that the charge so made is reasonable.

Without undertaking to set out the provisions of the act in detail, relative to this question, we have reached the conclusion that the exceptions assigning error in this respect

should be sustained, on the ground that what is termed in the act a license fee is a tax on property, and obnoxious to section 6, article I of the Constitution, which provides that "all property subject to taxation shall be taxed in proportion to its value."

The rule is thus stated in Cooley's Con. Lim., pages 242-3:

"A right to license an employment does not imply a right to charge a license fee therefor, with a view to revenue, unless such seems to be the manifest purpose of the power; but the authority of the corporation will be limited to such a charge for the license as will cover the necessary expenses of issuing it, and the additional labor of officers and other expenses thereby imposed. A license is issued under the police power; but the exaction of a license fee with a view to revenue would be an exercise of the power of taxation, and the charter must plainly show an intent to confer that power, or the municipal corporation cannot assume it."

And on pages 608-9, the author also says:

"Taxes may assume the form of duties, imposts and excises; and those collected by the national government are very largely of this character. They may also assume the form of license fees, for permission to carry on particular occupations, or to enjoy special franchises. They may be specific; such as are often levied upon corporations, in reference to the amount of capital stock, or to the business done, or profits earned by them. Or they may be direct; upon property, in proportion to its value, or upon some other basis of apportionment which the legislature shall regard as just, and which shall keep in view the general idea of uniformity."

But this question is settled beyond all controversy by reason of the fact that the act, in its title, denominates the vehicle license as *"a property tax."*

The next question is, whether the act is lacking in uniformity in its operation, and discriminatory against the tax-

payers of the city of Columbia, in that the city is required to bear the expense of locating roads and acquiring rights of way, when the location is within the city, while as to roads outside the city, the expenses of locating the same and condemning the lands, are to be paid out of the funds provided by the act—in other words, whether the citizens of the city of Columbia are double taxed.

In section 4 the act provides "that in the city of Columbia acquisition of the rights of way, whether by purchase, condemnation or otherwise, shall be made by the corporate authorities, and at the expense of the city of Columbia."

The taxable property within the limits of the city of Columbia is liable in the same manner as other taxable property within the limits of Richland county, for the indebtedness of the county under the act. Not only is the property within the limits of the city of Columbia liable as aforesaid, but the act makes it liable also for the expenses of acquiring rights of way in the city, while the additional liability is not imposed upon the taxable property outside the limits of the city. If the legislature had the power to impose the additional indebtedness, on the taxable property of the city, then it, also, had the power to make that property liable for the entire indebtedness of Richland county under the act.

The act is, therefore, in violation of the constitutional provision, that taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

The next question is, whether the words "corporate authorities," used in section 5, article X of the Constitution, which provides that "the corporate authorities of counties, etc., may be vested with power to assess and collect taxes for corporate purposes," and the words "fiscal authorities," in section 13, article X, which provides that "the taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities

thereof," include such a commission as was created by the act.

These words were intended to be restrictive in their nature, and a limitation upon the power of the General Assembly, investing certain persons with authority to exercise general control over the affairs of a county, municipality or other political division.

In designating the class of officers who were to be vested with power to levy and collect taxes for corporate purposes, the framers of the Constitution, no doubt, had in view those whose terms of office were fixed, as the presumption is that they would be more apt to be familiar with the necessities of the people than a commission having no connection with the government of the county, in general, but only clothed with a special duty pertaining to a single transaction.

The supervisory control which the act conferred upon the commission over the auditor and treasurer, and vesting the commission with the powers of the supervisor, tended to defeat the intention of the Constitution, and to render the said provisions without force and effect, which it is unreasonable to suppose, was the intention of the Constitution.

The next question is, whether the act is unconstitutional on the ground that it increases the bonded debt of the city of Columbia without a vote of its qualified electors, contrary to section 7, art. VIII, and section 13, art. II, of the Constitution.

Section 7, art. VIII, provides that no city or town shall incur any bonded debt, exceeding eight per cent. of the assessed value of its taxable property. It also provides that no such debt shall be created, except by a vote of the majority of the qualified electors.

The provision in section 5, art. X, that the bonded debt of a county, municipality, etc., shall never exceed eight per cent., is a limitation upon the power of the legislature itself, to create a bonded indebtedness, beyond that per cent. And, the provision that no county, municipality, etc., should be

authorized to increase its bonded indebtedness, beyond eight per cent., is a limitation upon the power of the legislature, to authorize the creation of a bonded indebtedness, beyond eight per cent.

Section 13, art. II, provides the manner in which an election by a municipality shall be conducted.

The city of Columbia is a corporate entity, and as such separate and distinct from the corporation Richland county. *Welch* v. *Getzen,* 85 S. C. 156, 67 S. E. 294.

The legislature recognized this fact, when it provided in the act, that acquisition of the right of ways in the city of Columbia, should be made by the corporate authorities and at the expense of said city.

The case was tried and decided upon this theory, as appears throughout the record. The attorneys of the respective parties plaintiff and defendant, agreed that the proportion of the *city of Columbia's* liability under the act, was $833,333.34, which is two-thirds of the entire indebtedness of Richland county. The principal ground discussed by his Honor, the Circuit Judge, in his decree, and upon which he mainly relied in refusing the injunction, was, that the existing bonded indebtedness of the city of Columbia, together with its proportion of the entire indebtedness, was not in excess of fifteen per cent. of its taxable property.

Section 5, art. X, contains the only provision in the Constitution, permitting an increase of the bonded indebtedness, to an amount not exceeding fifteen per cent., which provision is as follows:

"Wherever there shall be several political divisions or municipal corporations, covering or extending over the territory, or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations, shall so exercise its power to increase its debt, under the foregoing eight per cent. limitation, that the aggregate debt over and upon any territory of this State, shall never exceed fifteen per centum of the value of all

taxable property in such territory, for taxation by the State."

But the right to invoke the provision as to the fifteen per cent. was subject to the requirement that each of the political divisions or municipal corporations therein mentioned, should have the right so to exercise its powers, as to determine for itself, whether it was desirous of increasing its bonded indebtedness.

We have already shown that a city can not increase its bonded debt, without submitting the question to its qualified electors.

His Honor, the Circuit Judge, was, therefore, in error, when he applied the provision as to the fifteen per cent. limit, without, also, applying the provision empowering the city of Columbia to determine for itself, in the manner provided by section 7, art. VIII, and section 13, art. II, whether it desired such increase.

The last question we will consider is, whether there was error on the part of his Honor, the Circuit Judge, in ruling that it is not essential to the creation of the bonded indebtedness of Richland county, to submit the question to the qualified electors of the county.

In the case of *Carrison* v. *Kershaw County*, 83 S. C. 88, 64 S. E. 101, the petitioners, who were taxpayers of Kershaw county, applied for an injunction to restrain the county commissioners from issuing coupon bonds of the county, to the amount of forty thousand dollars.

The Court said: "The question presented by the petition and return is, whether the county commissioners have authority to issue said bonds, without submitting the question of such issuance to an election."

In dismissing the petition, the Court said:

"The power of the legislature to confer such authority upon the county commissioners is clear. While art. X, section 11 of the Constitution, forbids an increase of the public debt of the State, without submitting the question to the

qualified electors, and while art. VIII, section 7, forbids any
city or town from creating a bonded debt without submitting
the question to the qualified electors of the city or town, we
find no such restriction on the power of the legislature, with
respect to the issuance of bonds by a county. In the absence
of such restriction, the power of the legislature in the matter
is plenary."

The last sentence just quoted is, however, not to be con-
strued as ruling that the power of the legislature in creating
or authorizing the creation of a bonded indebtedness for a
county extends to the fifteen per cent. as this would be in
violation of section 5, art. X, which provides that it shall
not exceed eight per cent.

The appellant's attorney was granted permission to review
this case.

This Court, however, adheres to the principle therein
stated, which is conclusive of the question under considera-
tion.

In the case just mentioned, the question whether a com-
mission such as that created by the act under consideration,
can be regarded as the corporate authorities of a county,
was not involved.

For these reasons I dissent.

MR. JUSTICE WATTS and CIRCUIT JUDGE MAULDIN also
dissent from the opinion of the Court, and concur in the
result of the dissenting opinion announced by the Chief Jus-
tice.

MR. CIRCUIT JUDGE GARY, *also dissenting.* Inasmuch as
the questions now before the Court *en banc* are most impor-
tant, and inasmuch as our conclusion may have a very seri-
ous effect upon the reserved rights of the people, I feel
impelled to express my view somewhat at length.

I approach the decision of the case with a full realization
of the responsibility that is upon each member of the Court

*en banc,* and with a full appreciation of what Chief Justice Marshall has well said in *Fletcher* v. *Peck,* 6 Cranch, 128, where it became the duty of the Court to consider whether a statute of Georgia was in conflict with its Constitution. "The question," said Chief Justice Marshall, "whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. But the Court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers and its acts to be considered as void." We shall attempt to keep in mind and adhere to these principles as vital in the relations which should exist between co-ordinate branches of the government.

The act in question undertakes to organize a commission composed of five private citizens theretofore in no way connected with the corporate affairs of Richland county, of any of the political subdivisions thereof or of any of the municipal corporations in said county, and, to give to the commission so created the right in their discretion to issue bonds of the said county of Richland to the amount of one and one-quarter millions of dollars, and to levy and have collected a property tax to pay the said indebtedness, etc. The money so raised is to be used for the purpose of improving the public highways of Richland county.

It is not pretended that the General Assembly has itself made the levy contemplated by the act, nor could such claim be successfully maintained in the face of the case of *Railway Co.* v. *Kay,* 62 S. C. 28, 39 S. E. 785.

Among other safeguards against burdensome taxation, the people, in their sovereign capacity, enacted this provision of the Constitution: "The corporate authorities of counties, townships, school districts, cities, towns and villages may

be vested with power to assess and collect taxes for cor-
porate purposes, such taxes to be uniform in respect to per-
sons and property within the jurisdiction of the body impos-
ing the same." Art. IV, sec. 5. Is the act above referred
to in contravention of this constitutional provision? This
provision, as we understand it, is intended to be a limitation
upon the power of the General Assembly to delegate the
power of taxation. The legislature had no power at all to
delegate the taxing power until an exception was made in
favor of the municipal corporations enumerated, and to the
corporate authorities thereof.

Such was the view of the late Chief Justice McIver, and
such has been the view of the Courts of other States, and
of the Supreme Court of the United States whenever this
provision has undergone judicial interpretation.

In *Floyd* v. *Perrin,* 30 S. C. 15, 8 S. E. 14, 2 L. R. A.
242, C. J. McIver said:

"The people in their sovereign capacity have, by their
Constitution, entrusted the taxing power to the General
Assembly, and upon a familiar principle, this power thus
delegated to that body, cannot be delegated by it to any
subordinate agency, except by express permission of the
sovereign authority. The framers of the Constitution,
recognizing this doctrine, provided that this high power of
taxation, might be delegated to certain subordinate agencies
for certain purposes, for we find it declared in section 8,
article 14. (Here follows the language of the Constitution
above quoted.) "It is clear, therefore, that this provision is,"
as said by Waite, C. J., in *Weightman* v. *Clark,* 103 U. S.
259, in speaking of a similar provision in the Constitution
of Illinois, "a limitation on the power of the legislature to
authorize taxation by public corporations."

"When, therefore, a question arises as to the constitu-
tionality of an act purporting to delegate the taxing power
to some subordinate agency of the government, two inquiries
are presented:

"1st. Whether such agency is one of those to which the Constitution permits the taxing power to be delegated.

"2d. Whether the taxation proposed to be authorized is for a corporate purpose, for, as we have seen, this power can only be delegated to the corporate authorities of counties, townships, etc., and only for corporate purposes." *Floyd v. Perrin*, 30 S. C. 15, 8 S. E. 14, 2 L. R. A. 242.

This statement of the meaning of the constitutional provision referred to, has never been questioned, although it was subsequently decided, adversely to what was in this case held, that the purpose for which the levy was made was a corporate purpose, and that the township was a corporation.

Touching the power of the legislature to delegate the taxing power, Judge Cooley says: "It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system, and, when properly understood, permits of no exception. And it is applicable with peculiar force to the case of taxation. The power to tax is a legislative power. The people have created a legislative department for the exercise of the legislative power, and within that power lies the authority to prescribe the rules of taxation, and to regulate the manner in which these rules shall be given effect. There is, nevertheless, one clearly defined exception to the rule that the legislature shall not delegate any portion of its authority. The exception, however, is strictly in harmony with the general features of our political system, and rest upon an implication of popular assent which is conclusive. The exception relates to municipal corporations.

Immemorial custom which tacitly or expressly has been incorporated in the several State constitutions, has made these organizations a necessary part of the general machin-

ery of State government, and they are allowed large author-
ity in matters of local government, and to a considerable
extent are permitted to make the local laws. This indul-
gence has been carried into matters of taxation, the State in
very many cases doing little beyond prescribing rules of
limitations within which for local purposes the local author-
ities may levy taxes. The legislature, however, in thus
making delegation of power to tax must make it *to the cor-
poration itself,* and provide for its exercise by the proper
legislative authority of the corporation."

Without questioning whether the bonds contemplated to
be issued by this act and for which taxes must be levied are
for corporate purposes, we do question most vigorously
whether the agency to which it is sought to delegate the
taxing power is one of those to which the Constitution
permits the taxing power to be delegated, namely, the cor-
porate authorities of the county of Richland.

The limitation upon the General Assembly to delegate the
power of taxation is undoubtedly to corporate authorities.
What is meant by corporate authorities?

In the case of *O'Brien* v. *Wheelock,* 184 U. S. 487, 46
L. Ed. 653, 22 Sup. Ct. Rep. 354, Chief Justice Fuller,
speaking for the Court in construing a constitutional pro-
vision substantially identical with the language of our Con-
stitution, says: "It was ruled that the right of taxation could
not be granted by the General Assembly in any form to
private persons or to private corporations; that the provision
limited the power of the General Assembly to grant the
right to assess and collect taxes to the corporate or local
authorities of the municipalities or districts to be taxed;
that a local burden of taxation or special assessment could
not be imposed upon a locality without the consent of the
taxpayers to be affected; and that corporate authorities were
municipal officers *directly elected* by the people of the munic-
ipality or appointed in some mode to which they had given

their assent," citing *Harvard* v. *St. Clair & M. Levee & Drainage Co.,* 51 Ill. 130, and other cases from Illinois.

The construction of the State Constitution in Harvard's case and others has been repeatedly recognized by the Court as authoritatively established. The language of the Illinois Constitution is identical with the language in our Constitution. Corporate authorities in their Constitution was invariably interpreted to mean "municipal officers directly elected by the people of the municipality or appointed in some mode to which they had given their assent."

The legislature of Kansas passed an act authorizing the creation of a board of road commissioners and empowering it, among other things, to create a debt and levy taxes. In declaring the act unconstitutional the Supreme Court expressed itself vigorously as follows:

"Does the Constitution of the State of Kansas authorize the legislature to delegate the power of taxation either to the signers of these petitions or to these road commissioners? Can a tax be arbitrarily forced upon the taxpayers of a county either by the individuals or by officials in whose appointment they have no voice? The power of taxation is a power inherent in all governments. In a constitutional government, the people by the Constitution confer it on the legislature. It is one of the highest attributes of sovereignty. It includes the power to destroy. It appropriates the property and labor of the people taxed. Unrestrained power of taxation necessarily leads to tyranny and despotism. Hence, in all free governments the power to tax must be limited to the necessities for the purposes of government and the agencies for local taxation should be fixed and their powers limited by organic law and they should be so selected as to be directly answerable for their official acts to their local constituencies or districts to be taxed. If they act corruptly those directly interested may then remove them and appoint others. If those directly interested have no voice in their appointment or power to remove them they

have no means of correcting their abuses. No other rule can secure those to be taxed from oppression and fraud on the part of the taxing officers." *Wyandotte County Comrs. v. Abbott*, 52 Kansas 148, 34 Pac. 416.

Proceeding further, the Court said: "Self-taxation or taxation by officers chosen by or answerable to those directly interested in the district to be taxed is inseparable from that protection of the right of property that is either expressly òr impliedly guaranteed by all written constitutions under our system of government. Of all the powers of government the one most liable to abuse is the power of taxation. If placed in hands irresponsible to the people of the district to be taxed, its abuse is a mere question of time.

"The legislature is not the fountain, not the source of power. Under our system of government the legislature can exercise only such power as the people have delegated to that body, either expressly or by necessary implication by the Constitution. All rights not so delegated are retained by the people.

"Illegal or oppressive taxation is destructive of the right of property and is not government under the Constitution, but is misgovernment."

Equally as vigorous and to the point is the language of the Supreme Court of Iowa in the case of *Howe* v. *Des Moines*, 103 Iowa 76; 72 N. W. 639; 39 L. R. A. 285; 64 Am. St. Rep. 157, viz.: "We hold that no officer and no board not elected by and immediately responsible to the people can be made the repository of such power. If this power was given to the city council and it was abused the people could, at least, prevent a recurrence of the wrong at the polls; but if it be reposed in a body not elected by the people the remedy is uncertain, indirect and likely to be long delayed."

The almost unlimited power sought to be conferred by the act under consideration upon the newly created board of highway commissioners of Richland county is of itself a

forcible reminder that the power to fix, determine and levy a tax for local purposes should be conferred upon some body which stands as the direct representative of the people.

To the same effect as the decisions above referred to, are the decisions of the Supreme Court of Pennsylvania, Michigan and other States, all regarded as high authority. But time will not permit me to call attention to any more.

In view of the long list of text writers and respectable authorities from our State and other States, holding that the words "corporate authorities," when used in the provision of the Constitution referred to, are intended to limit the persons to whom the taxing power may be delegated and that the words are intended to designate persons directly responsible to the people to be taxed, we feel constrained to take that view.

If, then, the words are intended as a limitation of the power to delegate the taxing power, it is obvious that it would be an evasion, if not a violation of the Constitution, to permit the legislature to ignore the corporate authorities of Richland county, and to create a highway commission with power to saddle upon Richland county a bonded indebtedness of one and one-quarter millions of dollars, according to its discretion. What Judge Cooley has said in an analysis and a review of the case I have just mentioned, and some inclining to a different view, seems appropriate here: "Whatever may be thought of the relative soundness of these decisions in matters of law; those which deny the power to levy such invidious burdens are likely to conduce to equality and fairness in matters of local taxation and to just purposes and purity in legislation. It is difficult to conceive of a more corrupting power than that of voting taxes by those who are not to feel them, especially when the expenditure may be confined to those who have no interest personally or as corporators." * * * "Any principle in representative government may well be considered obsolete when,

as applied, it removes the substantial responsibility and restraining power from the constituency concerned to a distant central authority."

It may be that this highway commission is composed of high-minded, honorable men; and, possibly it is better qualified to know what tax should be put upon the people of Richland county than are the people themselves. However that may be, the principle is wrong, and the power of taxation attempted to be conferred upon this commission is a long step in the direction of permitting boards not elected by or responsible to the people to determine what the taxpayers' property shall bear and a long step towards centralized government.

It will not do to say that by its creation this board became *ipso facto* the corporate authorities of Richland county. If this be true, the limitation does not limit, for under that construction we can conceive of only very, very rare instances of a delegation of the taxing power that would be obnoxious to the provision of the Constitution referred to and the constitutional convention has done a vain thing,— simply enacted a high sounding but empty phrase—"corporate authorities," or as another has expressed it, "the maxim that taxation and representation go together would seem to be merely a glittering generality, promising much but assuring nothing."

It is only by adopting this view, to wit, that the highway commission becomes "the corporate authorities" by its creation, that those who contend for the constitutionality of the act can hope to sustain it. I cannot accede to such a view. I cannot concede that the constitutional convention, as a means of limiting the power of the legislature to delegate its taxing power, adopted a plan so impotent and unavailing.

For these reasons and for the further reason that the term of office of the members of the board of highway commis-

sioners is uncertain in length and, therefore, obnoxious to the Constitution, I concur in the opinion of the Chief Justice and think that the judgment of the Court below should be reversed.

MR. JUSTICE FRASER and CIRCUIT JUDGE SHIPP concur in the opinion of CIRCUIT JUDGE GARY.